# UNIVERSITY OF UTAH, RESPONDENT *v.* MORGAN RICHARDS, STATE AUDITOR, APPELLANT.

STATUTES — INTERPRETATION OF.   SPECIFIC STATUTE — HOW CONSTRUED.   CHAP. 5 AND CHAP. 53 SESS. LAWS 1899 CONSTRUED AND HARMONIZED.   LATER ACT—COVERING FORMER ACT—WHEN NOT A REPEAL.   SPECIAL LANGUAGE CONSTRUED.

*Statutes—Interpretation of.*

Repeals by implication are not favored by the law; one act is not to be allowed to defeat another if by reasonable construction the two can be made to stand together; and in the interpretation of laws particular provisions relating to a former subject must govern in relation to that subject as against general provisions in another part of the law which might otherwise be broad enough to include it.

*Specific Statute—How Construed.*

Where a statute enumerates the persons and things to be affected by its provisions, there is an implied exclusion of others, and the natural inference follows that it is not intended to be general.[1]

*Chap. 5 and Chap. 53 Sess. Laws 1899 Construed and Harmonized*

Chap. 5 Sess. Laws 1899, being specific, temporary and special, covering a definite special subject, and having a special, temporary object and duration; and Chap. 53 Sess. Laws 1899, being a general act, having no relation to the same subject or purpose and being continuous in its operation, the two have no repugnancy to each other and are easily harmonized.

*Later Act—Covering Former Act—When not a Repeal.*

A later act, covering part or all of the provisions of a former act, does not necessarily repeal such former act, the rule being that, if by fair and reasonable interpretation, acts which are seemingly contradictory, may be enforced and

---

[1] *Irrigation Co.'s* v. *Canal Co.'s*, 14 Utah 163.

made operative and harmonious, without obscurity or conflict, both will be upheld, and the later will not be regarded as repealing the former by construction or intendment.

*Special Language Construed.*

A clause that, "all laws in conflict herewith shall not be construed to prevent the carrying out of the provisions of this act," is a declaration on the part of the legislature that the act was enacted for a special, particular and temporary purpose, and that it should be enforced according to its terms without regard to any other law in force.

(Decided Nov. 16, 1899.)

Original application in this court for writ of mandate to compel the State Auditor to draw his warrant for $5,000 to be expended by plaintiff under Chapter 5 of the Laws of 1899. *Writ allowed.*

*Hon. A. C. Bishop*, Attorney General, for appellant.

This is an action in mandamus, brought to compel the State Auditor to issue a warrant for five thousand dollars to be expended by the plaintiff under the provisions of Chap. 5, of the Laws of 1899, the defendant having refused to draw a warrant for said amount, on the ground that the plaintiff did not comply with the provisions of Chap. 53, of the Laws of 1899.

The sole question involved is, what interpretation or construction is to be placed upon these two acts of the legislature.

That part of Chap. 5, material to this question, is contained in Sec. 7.

The refusal of the defendant to draw a warrant is based upon Chap. 53, which is amendatory of Sec. 2070 of the Revised Statutes.

It is a well recognized rule in the construction of statutes

and a settled maxim of the common law, that all acts based upon the same subject *in pari materi*, must be construed together and made to stand, if capable of being reconciled, and especially is this true of statutes enacted at the same legislative session. *McFarland* v. *State Bank*, 4 Ark. 410; (S. C. 37 Am. Dec. 3761;) *Wortheimer* v. *Basket*, 99 N. C. 70.

But where they are in irreconcilable conflict with each other, then the latter statute substitutes the former, notwithstanding both were intended to take effect and go into operation at the same time. The latter must be regarded as the last expressed will of the legislature. *Wright* v. *Tipton County*, 82 Ind. 337; *In re* Yak Wah, 9 Pac. 139; *Pierpont* v. *Crouch*, 10 Cal. 315.

It must appear from the last act that it was intended to take the place of the former, or that the two acts are so inconsistent that force and effect cannot be given to both. *Ex parte Smith*, 40 Cal. 419; Estate of Wixom, 35 Cal. 320; *People* v. *Burt*, 43 Cal. 560; *People* v. *Sargent*, 44 Cal. 430; *Northern Pac. R. R.* v. *Ellison*, 29 Pac. R. 263; *People* v. *Dobbins*, 14 Pac. 860; *In re* Hickey Tree Road, 43 Pa. St. 139; Sutherland on Stat. Const., Secs. 217, 283, 286; *Real Estate & Trust Co.* v. *Kragscow*, 47 Neb. 592.

Plaintiff is contending for a special or exclusive privilege as compared with other state institutions. A statute will be construed most strongly against a claim of exclusive privilege thereunder.

*U. S. Electric L. Co.* v. *Ross*, (D. C.) 24 Washington Law Reports 775.

*Messrs. Williams, Van Cott & Sutherland*, and *Messrs. Pierce, Critchlow & Barrette*, for respondents.

A general act neither modifies nor repeals special legis-

lation, to the details of which the legislature has previously given attention, even though dealing with the same subject matter, which sections 7 and 2070 do not. Sutherland Stat. Con., Sec. 157, 158.

In 109 U. S. 570–1, *ex parte* Crow Dog, it is said:

"Implied repeals are not favored. The implication must be necessary. There must be a positive repugnancy between the provisions of the new laws and those of the old." *Wood* v. *The United States*, 16 Pet. 342; *Davies* v. *Fairbairn*, 3 How. 636; *United States* v. *Tynen*, 11 Wall. 88; *State* v. *Stoll*, 17 Wall. 425.

In 23 Ency. Law 422, it is said: "A general law will not repeal an earlier especial act by mere implication."

See the great list of cases cited in note 3 to quotation.

Repeals by implication are not favored. If any part of Section 7 is repealed by Section 2070, it must be by implication, as there are no express words of repeal. Such repeals are not favored as it is well settled that in order to effect an implied repeal the inconsistency must be unavoidable. This is not so in the case at bar, because not only Section 7, but the whole act, refers to the drawing of money for a special purpose, while Section 2070 refers to biennial appropriations for expenses. Sutherland Stat. Con. Sec. 138; 109 U. S. 570, *ex parte* Crow Dog; 118 U. S. 393, *U. S.* v. *Langston*.

It is well settled that the legislature less intends that a later act shall repeal a previous one when passed at the same session. Suth. Stat. Con. 151 and 152.

Where there is no repeal clause in a general act, there is a presumption that the legislature did not intend to repeal a previous act, although on the same subject. Suth. Stat. Con. 147 and 148; *McAfee* v. *Southern R. R. Co.*, 36 Miss. 669.

MINER, J.

This is an action brought to obtain a writ of mandamus against the State Auditor, requiring him to issue a warrant for $5,000, to be expended by the plaintiff, through its regents, under the provisions of Ch. 5, Sess. Laws 1899, the defendant having refused on application to draw a warrant for such sum on the ground that Ch. 53, Sess. Laws 1899, supersedes and is repugnant to Ch. 5, and that the plaintiff had not complied therewith. We are required to place a construction or interpretation on these two provisions of the statute.

The legislature of this state, at its session in 1899, enacted Ch. 5, p. 20, which, among other things, provides for the removal of the University of Utah and its establishment on the site granted by Congress. By the first section of the act the regents of the university are authorized and directed to expend $200,000, or so much thereof as may be necessary to plat the grounds, procure plans, erect necessary buildings, equip and furnish the same, and do all other acts and things necessary to establish and construct said university. Section 7 of this act reads, as follows:

"Appropriation. There is hereby appropriated one hundred thousand dollars, or so much thereof as may be necessary, to effectuate the purposes mentioned in section 1, of this act; not to exceed fifty thousand dollars thereof may be drawn by the regents of the university of Utah at such times as they may deem proper during or after the year 1899; and not to exceed fifty thousand dollars may be drawn by the regents of the university of Utah at such times as they may deem proper during or after the year 1900; and the state treasurer and the state auditor are hereby authorized and directed to issue and pay warrants

for such one hundred thousand dollars as herein specified."

This act was approved and took effect on the 24th day of February, 1899.

Subsequently, at the same session, the legislature enacted ch. 53, p. 76, Sess. Laws, Utah, 1899. The object of this act is expressed in the title being to amend section 2070 Rev. Stat. 1898, in relation to state institutions drawing their biennial appropriations, and reads as follows: "Be it enacted by the Legislature of the State of Utah; Sec. 1. That section 2070 of the Revised Statutes of Utah, 1898, be amended to read as follows:

"Sec. 2070. Appropriations. When Available. How Drawn. That on the first day of each month, or as soon thereafter as the bills for the expenses for the previous month have been audited, the board of control of each state institution, or the proper committee thereof, duly authorized by the board for such purpose, shall make a requisition upon the state auditor for a warrant in sufficient amount to pay the bills so audited, and thereupon the state auditor shall draw his warrant against the appropriation made for such institution for the amount named in the requisition, in favor of the treasurer of the governing board of the institution, or in case of the state prison in favor of the warden thereof. To obtain such warrant the treasurer of the board or the warden must present to the state auditor a written authorization from the board."

This act took effect on its approval March 9, 1899.

The appellant contends that this last act repeals or is repugnant to that part of Sec. 7, Ch. 5, as provides that the regents may draw not to exceed $50,000, or such part thereof as may be necessary, during or after the year 1899, and not to exceed $50,000 during or after the year 1900, and therefore claims that so much of said sum found necessary, should be drawn under Ch. 53, and that

requisition for the same should be made at the beginning of each month sufficient to pay bills audited for the previous months.

The law makers did not see fit to embrace in the latter any express words of repeal of the former act. If such former act is repealed, it must be by implication. If the acts are repugnant or are so irreconcilably in conflict with each other and cannot be harmonized together, in order to effectuate the purpose of their enactment, then it may be said the later act may by implication repeal the former. Repeals by implication, however, are not favored by the law. One act is not to be allowed to defeat another if by reasonable construction the two can be made to stand together. Particular provisions relating to a former subject must govern in relation to that subject as against general provisions in another part of the law which might otherwise be broad enough to include it.

Where a statute enumerates the persons and things to be affected by its provisions, there is an implied exclusion of others, and the natural inference follows that it is not intended to be general.

*Irrigation Co.* v. *Canal Co's.*, 14 Utah, 163. So, as said in Sutherland on Statutory Construction, 157, 8, "It is a principle that a general statute without negative words will not repeal by implication from their repugnancy the provisions of a former one which is special or local, unless there is something in the general law or in the course of legislation upon its subject matter that makes it manifest that the legislature contemplated and intended a repeal. When the legislator frames a statute in general terms, or treats a subject in a general manner, it is not reasonable to suppose that he intends to abrogate particular legislation to the details of which he had previously given his attention, applicable only to a part of the same subject

unless the general act shows a plain intention to do so." *Ex parte* Crow Dog, 109 U. S. 570; Sedgwick on Con. Statute & Const. Law, p. 97; *Mallory* v. *Reinhart*, 115 Pa. St. 25; 23 Am. & Eng. Ency. of Law, pp. 424–5; Sutherland Statutory Construction, Sec. 147.

The University Act had special reference to the removal of the university of Utah and its establishment on the site granted by Congress, and to plat the grounds, procure plans, erect necessary buildings thereon, and to equip and furnish the same as a state university, and the sum of $200,000 was appropriated for that purpose to be drawn at such times as the regents thought proper, not to exceed $50,000 to be drawn during or after the year 1899, and a like sum during or after 1900. The regents are directed by the act to expend the sum appropriated, or so much thereof as is necessary for this purpose. It was doubtless within the contemplation of the legislature that contracts could be made to better advantage and material and labor procured at a greater saving to the state when cash could be paid at the maturity of the obligations entered into by the regents.

By requiring the regents to comply with the law and to draw the money at such times as they may deem proper, the legislature intended to vest in such board a large discretion, as to the amount of money to be drawn and when it should be drawn, in order to meet the various expenses and obligations that they were required to incur. The appropriation was made for a special, temporary and specific purpose. The plan was to be carried out in a special way, by a special board, when the object was accomplished, the improvements made, and the appropriation exhausted, the act so far ceased to be operative. The act applies to no other board, building or fund. Nor are the payments to be made biennially. At the end of

the act, as if to emphasize the purpose and object of it and render it operative as against any other provision of the statute, the legislature made a provision that "All laws in conflict herewith shall not be construed to prevent the carrying out of the provisions of this act."

Ch. 53, enacted a few days later amended section 2070 of the Rev. Stat. in relation to state institutions drawing their biennial appropriations, and provided that on the first of each month, or as soon thereafter as bills for expenses for the previous month have been audited, the board of each state institution may make requisition for warrants to pay the bills so audited, etc.   Before this amendment a proper pro rata of the biennial appropriation to state institutions was drawn quarterly in advance.   By the old method of drawing this fund under sec. 2070, large amounts of money could be drawn from the state treasury in advance so as to deplete it for a time, while the money drawn might lay idle in banks and thus cause the state some financial embarrasment.   This may have been the fault sought to be remedied by the enactment.

All state institutions have their regular expenses accruing at regular intervals.   The biennial appropriations are supposed to be sufficient to cover these expenses, and the provision was probably made so that such bills could be met monthly, after they were audited, and thereby preserve the remaining fund in the hands of the state treasurer thus subserving all legitimate purposes.

In construing a statute the amendment thereto should be read in connection with the section amended.

Endlich on Inter. of Statutes, Sec. 294, says:

"No doubt, a statute which is amended, is thereafter, and to all acts subsequently done, to be construed as if the amendments had always been there, and the amendment itself so thoroughly becomes a part of the original statute,

20 Utah—30.

that it must be construed in view of the original statute as it stands after the amendments are introduced and the matters superseded by the amendments eliminated."

Had Section 2070 originally read as it is amended, it would not reasonably be contended that the enactment of Sec. 7 of Ch. 5 repealed it, as they do not apply to the same subject-matter.

Ch. 5 deals with a special appropriation for a special, temporary; definite purpose, such as the construction of buildings for an expensive state university, and the laying out of grounds, which, when completed, ends the object of the statute.

Ch. 53 deals with a general subject concerning monthly distributions of biennial appropriations covering the expenditures of all public institutions in the state.

One is specific, temporary and special, covering a definite, special subject, and having a special, temporary object and duration; the other being a general act having no relation to the same subject or purpose, and being continuous in its operation. The two provisions have no repugnancy to each other, and are readily harmonized.

On this subject Sutherland on Stat. Const. Sec. 138, says:

" One statute is not repugnant to another unless they relate to the same subject and are enacted for the same purpose. When there is a difference in the whole purview of two statutes apparently relating to the same subject, the former is not repealed."

In the case of *Crane* v. *Reeder*, 22 Mich. 322 it is said:

" Where there are two acts or provisions, one of which is special and particular, and certainly includes the matter in question, and the other general, which if standing alone would include the same matter, and thus conflict with the special act or provision, the special must be taken as

intended to constitute an exception to the general act, or provision, especially when such general and special acts are cotemporaneous, as the legislature are not presumed to have intended a conflict." Black on Int. of laws, p. 116.

It is also contended that the later act passed at the same session repeals the previous one, but this does not necessarily follow. The repeal depends upon the intention of the legislative body as expressed in the act. The fact that the later act is different from the former one is not sufficient; it must further appear that the later act is contrary or inconsistent with the former in order to justify the contention that the first is repealed. If the later act covers part or all of the provisions of the former, it may not effect a repeal, for it may then be merely affirmative or auxiliary to the former. The rule that, if by fair and reasonable interpretation, acts which are seemingly contradictory, may be enforced and made operative and harmonious, without obscurity or conflict, both will be upheld, and the later will not be regarded as repealing the former by construction or intendment.

In Sutherland on Stat. Const. Sec. 152, 3, it is said:

"The presumption is stronger against implied repeals where provisions supposed to conflict are in the same act or were passed at nearly the same time. In the first case it would manifestly be an inadvertence, for it is not supposable that the legislature would deliberately pass an act with conflicting intentions; in the other case the presumption rests on the improbability of a change of intention, or, if such change has occurred, that the legislature would express it in a different act without an express repeal of the first."

This authority has a pertinent bearing, as also does section 147 of the same work, inasmuch as no express

words of repeal are found in the later enactment; while in the former act, passed at the same session, there is contained a clause which provides that "all laws in conflict herewith shall not be construed to prevent the carrying out of the provisions of this act."

This clause is unusual, and was evidently inserted for a purpose. It does not in words repeal any other law, but affects the construction of all laws in conflict and disarms them from any repealing effect upon the act. It is seemingly a declaration on the part of the legislature that the act was enacted for a special, particular, and temporary purpose, and that it should be enforced according to its terms without regard to any other law in force.

We hold it was the exclusive province of the legislature to decide how, when and by whom money should be drawn by the regents of the University of Utah under the provisions of Ch. 5. A discretion was intended to be vested in the board of regents, and we are satisfied that in so far as they have gone they have not exceeded their authority, but were acting within the clear provisions of the statute in making the demand and requisition in question.

The judgment of the district court in overruling the demurrer and in directing a peremptory writ of mandate to issue, as prayed, is affirmed.

Let the writ issue accordingly.

BARTCH, C. J. and BASKIN, J. concur.