GUARDIAN AGENCY, INC., Appellant, vs. GUARDIAN MUTUAL SAVINGS BANK, Respondent.

*March 18—April 12, 1938.*

For the appellant there was a brief by *Theodore Kramer,* attorney, and *Poss, Toelle & Schuler* of counsel, all of Milwaukee, and oral argument by *Mr. Kramer.*

For the respondent there was a brief by *Skogmo & Gill* of Milwaukee, and oral argument by *George B. Skogmo* and *Dewey B. Gill.*

FRITZ, J.    The plaintiff appeals from that portion of an order which overruled its demurrer to the first defense stated in the answer of the defendant, Guardian Mutual Savings Bank, to a complaint alleging facts under which the plaintiff seeks to recover money owing under an agreement dated January 29, 1937.    That agreement, entered into between the defendant and L. M. Kesselman and assigned by him to the plaintiff, provides that the defendant will make certain payments in consideration of Kesselman's releasing the defendant from its obligations under agreements dated June 22, 1934, and July 28, 1936.    Those agreements were likewise between Kesselman and the defendant.    The first of those agreements provided (so far as here material) that,—

"In consideration of" Kesselman's "having interested the corporators of the organization of the" Guardian Mutual

Savings Bank; . . . "and, further consideration for the extensive amount of time expended by" Kesselman "in the organization of said bank—carrying on negotiations, bringing court action, and initiating legislation, all of which resulted favorably for the" Guardian Mutual Savings Bank; "and further consideration of expenses incurred by" Kesselman "for traveling, clerical help, and maintenance of corporators' office and other miscellaneous and necessary expense and in consideration of" Kesselman's "purchasing Founders' Certificates, . . . of not less than" $3,000; "and in recognition of" Kesselman's "full and complete understanding of the sales problems involved in presenting the said savings contracts to the public and in promoting the sales of said savings contracts. . . .

"Now therefore, The" Guardian Mutual Savings Bank "hereby hires and appoints" Kesselman "as its sales manager and agrees that" he "shall have the exclusive control and direction of the sale of all types of savings contracts, . . . for a period of ten (10) years with the option on the part of" Kesselman "to renew this agreement for a further period of five (5) years by written notice to the" Guardian Mutual Savings Bank "at least six (6) months before the expiration of this agreement."

And further provided that the Guardian Mutual Savings Bank agreed to pay to Kesselman the $60 paid by depositors for each unit of $1,000 savings contract sold to them, and that he, as his compensation for his services and expenses as sales manager, could retain the balance remaining of such payments after he distributed agreed portions thereof among the members of the sales organization.

The second agreement merely modified the first in respects which are immaterial on this appeal.

The facts alleged as the defendant's first defense, so far as here material, are that the defendant is a mutual savings bank organized under ch. 222, Stats., and under the definitions in ch. 224, Stats., is a banking corporation within the contemplation of sec. 221.02, Stats.; that the purported consideration for the contract of January 29, 1937, "was the

relinquishment by plaintiff of certain of its rights under a previous contract . . . dated June 22, 1934, . . . which . . . was executed contrary" to sec. 221.02, Stats., "in that and wherein the said L. M. Kesselman was to receive and his assignee, the plaintiff herein, did receive and by the terms of the present contract" dated January 29, 1937, "will continue for a long time to receive directly and indirectly, commissions, compensations, bonuses, rights and privileges for services rendered in organizing the said defendant bank, a banking corporation of the state of Wisconsin, contrary to and in violation of" sec. 221.02, Stats., "and that the said original contract" (of June 22, 1934) "was therefore void and of no force or effect;" and that the payments required to be made by the defendant to the plaintiff under the contract of January 29, 1937, are made from funds paid in by depositors as a part of their depositors' agreement to advance moneys for the payment of expenses of the defendant bank and for no other purpose, and the payment of any part of said advances to the plaintiff or Kesselman, would not constitute legitimate expenses of the bank in that neither the plaintiff nor Kesselman are in any way rendering services to the said bank; and that upon the relinquishment of the contract of June 22, 1934, Kesselman terminated his employment and ceased to do any further work for the defendant, and the payments required to be made by the defendant under the contract of January 29, 1937, are in reality payments for the services of or privileges acquired by Kesselman in the organization of defendant, and would, if paid, defeat the intent of the statutes prohibiting the payment of a privilege, right, or commission in connection with the organization of a banking corporation.

The defendant contends and the court held that to allow recovery of the compensation to be paid under those agree-

ments to Kesselman, or the plaintiff as his assignee, would be in violation of the provision in sec. 221.02, Stats., that—

"No individual, partnership or corporation shall directly or indirectly receive or contract to receive any commission, compensation, bonus, right or privilege of any kind for organizing any banking corporation in this state, or for securing a subscription to the original capital stock of any banking corporation in this state, or to any increase thereof; . . ."—

because the defendant's obligations under the agreement of June 22, 1934, were largely, as therein stated,—

"In consideration of" Kesselman's "having interested the corporators of the organization of the" defendant; . . . "and, further consideration for the extensive amount of time expended by" Kesselman "in the organization of said bank—carrying on negotiations, bringing court action, and initiating legislation, all of which resulted favorably for the" defendant; "and further consideration of expenses incurred by" Kesselman "for traveling, clerical help, and maintenance of corporators' office and other miscellaneous and necessary expense . . . ;"—

and the only consideration for the payments to be made under the agreement of January 29, 1937, was the release of the defendant from its obligations under the agreement of June 22, 1934, which was illegal.

On the other hand, the plaintiff contends that sec. 221.02, Stats., is not applicable to the defendant or the agreements in question because the defendant is organized under the provisions of ch. 222, Stats., entitled "Savings Banks," and not under ch. 221, Stats., entitled "State Banks," in which sec. 221.02 was placed upon the renumbering of secs. 2024—6 to 2024—81, Stats., by ch. 291, Laws of 1923; and that therefore the defendant, as a savings bank, is not included in the phrase "for organizing any banking corporation

in this state" in sec. 221.02, Stats. In support of its contention the plaintiff relies upon the fact that in other sections in ch. 221, Stats., which are intended to be applicable to savings banks, they are named specifically; and that likewise the intention to have provisions in ch. 221, Stats., apply also to trust companies is indicated by specifically stating in ch. 223, Stats., relating to trust companies, that they may be organized pursuant to the provisions of ch. 221, and that they shall be subject to all the provisions, requirements, and liabilities of chs. 220 and 221, so far as applicable, with the exception of certain sections and as otherwise provided in ch. 223.

Upon due consideration of the provisions in sec. 221.02, Stats., and its origin and history in connection with other provisions now retained in chs. 221 to 224, Stats., it is our conclusion that the phrase "for organizing any banking corporation" in sec. 221.02, Stats., and the inhibition therein against receiving or contracting to receive any compensation, bonus, right, or privilege for the organizing thereof, are applicable to the organizing of savings banks, as well as state banks. At the outset it must be noted that the words "any banking corporation," as used in that phrase, are unambiguous and sufficiently comprehensive to cover banking in its broadest sense. When the above-quoted provision, which is now in sec. 221.02, Stats., was enacted by ch. 555, Laws of 1921, it was placed as sec. 2024—7 in ch. 94, Stats. 1921, which was entitled "Banks and Banking," and in which there were then included the statutory provisions relating to the banking business, that were parts of sec. 2024, as enacted by ch. 234, Laws of 1903. That enactment was entitled "An Act for the creation of banks and for the regulation and supervision of the banking business." That act had five subchapters entitled: I—Banking Department; II—State Banks; III—Mutual Savings Banks; IV—Mis-

cellaneous; V—Repealing Clause. And sec. 1 (sec. 2024—78, Stats.) of subchapter IV provided that—

"The term *'bank,'* as used in this *act,* shall be construed to mean *any incorporated banking institution* which shall have been incorporated under the laws of this state as they existed prior to the passage of this act, and *to such banking institutions* as shall hereafter *become incorporated under* the provisions of *this act."*

That definition of the term "bank" is all-embracing, and consequently the clause, "such banking institutions as shall hereafter become incorporated under the provision of this act," included also "Mutual Savings Banks," which, as the subject matter of the above-mentioned subchapter III, were one of the types of banking institutions that were to be incorporated "under the provisions of this act," *i. e.,* ch. 234, Laws of 1903. In view of the meaning and scope in those respects of the terms "bank," "banking institutions," and "mutual savings bank," it follows that, at the time of the enactment of sec. 221.02 in 1921, the phrase therein "for organizing any banking corporation" was undoubtedly intended to include the organizing of savings banks, as well as any and all other incorporated banking institutions. That legislative intent has not been changed by any subsequent enactment. By sec. 3 of a revisor's bill, ch. 291, Laws of 1923, former sec. 2024, Stats. (*i. e.,* secs. 2024—1 to 2024—81, which included sec. 221.02, then numbered 2024—7), was broken up and its various subsections were embodied in chs. 220 to 224, Stats. But, in view of the presumption that in the enactment of a revisor's bill there was no intention to change the meaning of the statutes revised (*London Guarantee & Acc. Co. v. Wisconsin Public Service Corp.* 228 Wis. —, 279 N. W. 76), that revision will not be deemed to have effected any change or limitation in the meaning and scope which the phrase "for organizing any

banking corporation" had upon its enactment in 1921. As there has been no ambiguity therein, whether considered in the light of strict or liberal rules of construction, the trial court's conclusion that—

"It was the manifest intent of the statute . . . to prohibit the receiving of compensation for organizing a Mutual Savings Bank as well as any other banking corporation"—

must be sustained.

That conclusion is not in conflict with our decision in *State ex rel. Wember v. Kingston,* 214 Wis. 362, 253 N. W. 401. We did not consider or pass upon sec. 221.02, Stats., in holding in that case that the discretionary authority conferred upon the banking commissioner by subs. (5) and (6) of sec. 221.01, Stats., to approve or disapprove articles of incorporation of state banks was not applicable to a mutual savings bank, because those subsections had not been incorporated by legislation in ch. 222, Stats. Those subsections were enacted by ch. 555, Laws of 1921, without any reference to or effect upon sec. 222.03, Stats. 1931, as enacted by ch. 721, Laws of 1913, to cover and govern the *method* for the incorporation of savings banks; and the question determined in the *Wember Case* related solely to the method prescribed by the statutes for the incorporation of such banks. Transactions or dealings of others with the bank in the conduct of its operations after it had become authorized to do business were not involved in that case. Consequently the applicability of sec. 221.02, Stats., to such subsequent transactions or dealings of savings banks was not considered in that case.

Plaintiff also contends that the agreement of June 22, 1934, is not in violation of sec. 221.02, Stats., because it is but a unilateral contract, *i. e.,* executed by the defendant and executory on the part of Kesselman, and "the consideration

to sustain it is performance by the promisee" Kesselman; and that, furthermore, the provisions therein as to consideration "are mere recitals and create no express obligations between the parties to the contract." Those contentions cannot be sustained. The agreement is not merely unilateral, and but executory on the part of Kesselman. True, he obligated himself to set up a sales organization, and to supervise and promote the sales of the defendant's savings contracts, etc.; but the defendant agreed to hire and appoint him its sales manager, and give him exclusive control and direction of the sale of its savings contracts for ten years with an option for a five-year renewal; and further agreed to pay over to him,—subject to his distributing portions thereof to the members of the sales organization,—the $60 service charge, which depositors were to pay to the defendant, for each $1,000 of the face value of the savings contracts. In view of those obligations on the part of the defendant to vest such rights and privileges in Kesselman, and to compensate him therefor, the agreement was still executory on its part, and he was to receive thereunder from the defendant rights, privileges, and compensation which were clearly within the meaning of those terms as used in sec. 221.02, Stats. Even though the compensation to be paid to him by the defendant was in part for services which he was still to perform under the agreement, and the statements therein as to consideration may be but recitals, it nevertheless appears therefrom that Kesselman was to receive the agreed rights, privileges, and compensation to a substantial extent in consideration of his "having interested the corporators of the organization of the" defendant; and in "further consideration for the extensive amount of time expended by" him "in the organization of said bank—carrying on negotiations, bringing court action, and initiating legislation, all of which resulted favorably for the" defendant. As those activities and expenditures were all for the purpose of organizing the bank, the

agreement by which he was to receive therefor, directly or indirectly, any commission, compensation, bonus, right, or privilege of any kind was in violation of sec. 221.02, Stats., and therefore unenforceable. As the court said in *Menominee River B. Co. v. Augustus Spies L. & C. Co.* 147 Wis. 559, 571, 572, 132 N. W. 1118,—

"A contract made in violation of a statute or for performance of an act which is prohibited by statute is void and will not be enforced by the court. This is true whether there is a prohibition and a penalty or merely a prohibition. . . . If any part of the consideration for a promise be illegal, or if there are several considerations for an unseverable promise one of which is illegal, the promise, whether written or oral, is wholly void, as it is impossible to say what part or which one of the considerations induced the promise. . . . The contract is void if it is only in part connected with the illegal transaction and the promise single or entire. . . . Objection to the illegality of this contract could not be waived by making or ratifying the contract, otherwise the statute would be ineffectual. . . ."

See also *Melchoir v. McCarthy,* 31 Wis. 252, 254; *Lowe v. Crocker,* 154 Wis. 497, 143 N. W. 176; *Hardy v. People's State Bank,* 185 Wis. 446, 201 N. W. 725; *Hawkins Realty Co. v. Hawkins State Bank,* 205 Wis. 406, 416, 236 N. W. 657; *Hoffman v. McMullen* (9th Cir.), 83 Fed. 372, 28 C. C. A. 178, 45 L. R. A. 410.

*By the Court.*—Order affirmed.