Joseph P. RUTH, sometimes also known as J. P. Ruth, Appellant,

v.

The EAGLE–PICHER COMPANY, a corporation, Appellee.

No. 5072.

United States Court of Appeals Tenth Circuit.

July 18, 1955.

Frank C. Lowe, Denver, Colo. (Albert L. Vogl and William F. Reynard, Denver, Colo., on the brief), for appellant.

Edward B. Evans, Cincinnati, Ohio (Edmund P. Wood, Cincinnati, Ohio, and W. A. McGrew, Denver, Colo., on the brief), for appellee.

Before PHILLIPS, Chief Judge, and HUXMAN and PICKETT, Circuit Judges.

PHILLIPS, Chief Judge.

This is an action for patent infringement brought by Ruth against the Eagle-Picher Company in the District of Col-

orado. Eagle-Picher imposed a motion to dismiss on the ground that while it is authorized to do business in the State of Colorado, it is a corporation organized under the laws of Ohio and had committed no acts of patent infringement within the District of Colorado. The trial court sustained the motion. Ruth has appealed.

28 U.S.C.A. § 109, prior to the 1948 revision of the Judicial Code, Act of June 25, 1948, 62 Stat. 869, in part read as follows:

> "In suits brought for the infringement of letters patent the district courts of the United States shall have jurisdiction, in law or in equity, in the district of which the defendant is an inhabitant, or in any district in which the defendant, whether a person, partnership, or corporation, shall have committed acts of infringement and have a regular and established place of business. * * *"

In the 1948 revision, § 1400(b) of Title 28 U.S.C.A. reads as follows:

> "(b) Any civil action for patent infringement may be brought in the judicial district where the defendant resides, or where the defendant has committed acts of infringement and has a regular and established place of business."

28 U.S.C.A. §§ 112 and 113, before the 1948 revision of the Judicial Code, in part read as follows:

> "§ 112. * * * except as provided in sections 113 to 118 of this title, no civil suit shall be brought in any district court against any person by any original process or proceeding in any other district than that whereof he is an inhabitant; * * *"

> "§ 113. When a State contains more than one district, every suit not of a local nature, in the district court thereof, against a single defendant, inhabitant of such State, must be brought in the district where he resides; but if there are two or more defendants, residing in different districts of the State, it may be brought in either district, and a duplicate writ may be issued against the defendants, directed to the marshal of any other district in which any defendant resides. * * *"

In the 1948 revision § 1391(b, c) of Title 28 U.S.C.A. reads as follows:

> "(b) A civil action wherein jurisdiction is not founded solely on diversity of citizenship may be brought only in the judicial district where all defendants reside, except as otherwise provided by law.

> "(c) A corporation may be sued in any judicial district in which it is incorporated or licensed to do business or is doing business, and such judicial district shall be regarded as the residence of such corporation for venue purposes."

In the 1948 revision, § 1392(a) of Title 28 U.S.C.A. reads as follows:

> "(a) Any civil action, not of a local nature, against defendants residing in different districts in the same State, may be brought in any of such districts."

In Stonite Products Co. v. Melvin Lloyd Co., 315 U.S. 561, 62 S.Ct. 780, 781, 86 L.Ed. 1026, the question presented was whether 28 U.S.C.A. § 109 was the sole provision governing venue of patent infringement cases, or whether that section was supplemented by 28 U.S.C.A. § 113. The court held that 28 U.S.C.A. § 109 was the exclusive provision controlling venue in patent infringement cases.[1]

---

1. In its opinion the court said:
   "We hold that Section 48 is the exclusive provision controlling venue in patent infringement proceedings.
   "Section 48 is derived from the Act of March 3, 1897, c. 395, 29 Stat. 695, and its scope can best be determined from an examination of the reasons for its enactment.

The question here presented is whether § 1400 is the sole provision governing patent infringement cases, or whether it is supplemented by § 1391(c).

■ It has been often stated that where there are two statutes upon the same subject, one being special and the other general, the presumption is, in absence of an express repeal, or an absolute incompatibility, that the special is intended to remain in force as an exception to the general,[2] without regard

"Section 11 of the Judiciary Act of September 24, 1789, c. 20, 1 Stat. 79, permitted civil suits to be brought in the federal courts against a person only in the district of which he was an inhabitant or in which he was found at the time of serving the writ. That section applied to suits for patent infringement. Chaffee v. Hayward, 20 How. 208, 216, 15 L. Ed. 804, 851; Allen v. Blunt, Fed.Cas. No.215, 1 Blatchf. 480. The Act of March 3, 1875, c. 137, 18 Stat. 470, retained the provision allowing suit whereever the defendant could be found. The abuses engendered by this extensive venue prompted the Act of March 3, 1887, c. 373, 24 Stat. 552, which, as amended by the Act of August 13, 1888, c. 866, 25 Stat. 433, permitted civil suits to be instituted only in the district of which the defendant was an inhabitant, except that in diversity jurisdiction cases suit could be started in the district of the plaintiff's or the defendant's residence. The substance of those provisions was reenacted as Section 51 of the Judicial Code (28 U.S.C. § 112, 28 U.S.C.A. § 112).

"After the holding of In re Hohorst, 150 U.S. 653, 14 S.Ct. 221, 225, 37 L. Ed. 1211, that the Act of 1887 as amended did not apply to a suit against an alien or a foreign corporation, 'especially in a suit for the infringement of a patent right,' the lower federal courts became uncertain as to the applicability of the Act of 1887 to patent infringement proceedings. In explanation of Hohorst's case, it was said in In re Keasbey & Mattison Co., 160 U.S. 221, 230, 16 S.Ct. 273, 275, 40 L.Ed. 402, that 'It was a suit for infringement of a patent right, exclusive jurisdiction of which had been granted to the circuit courts of the United States * * *; and was therefore not affected by general provisions regulating the jurisdiction of the courts of the United States, concurrent with that of the several states.' Thereafter the lower federal courts for the most part took the position that the Act of 1887 as amended did not apply to suits for patent infringement, and that infringers could be sued wherever they could be found.

"The Act of 1897 was adopted to define the exact jurisdiction of the federal courts in actions to enforce patent rights, and thus eliminate the uncertainty produced by the conflicting decisions on the applicability of the Act of 1887, as amended, to such litigation. That purpose indicates tht Congress did not intend the Act of 1897 to dovetail with the general provisions relating to the venue of civil suits, but rather that it alone should control venue in patent infringement proceedings.

"Section 52 is derived from R.S. § 740, which in turn stems from the Act of May 4, 1858, c. 27, 11 Stat. 272, a general act intended to do away with the insertion of special provisions preserving state-wide venue in acts dividing a state into two or more judicial districts, and the Act of February 24, 1863, c. 54, § 9, 12 Stat. 662. Respondents insist that Section 52 applies to patent infringement suits because it antedates Section 48, excludes from its purview only suits of a local nature, and is consistent with and complementary to Section 48 since it deals with the problem of venue in the geographical sense rather than in terms of specified classes of litigation. We cannot agree.

"Even assuming that R.S. § 740 covered patent litigation prior to the Act of 1897, we do not think that its application survived that Act, which was intended to define the exact limits of venue in patent infringement suits. Furthermore, the Act of 1897 was a restrictive measure, limiting a prior, broader venue. General Electric Co. v. Marvel Rare Metals Co., 287 U.S. 430, 434–435, 53 S.Ct. 202, 204, 77 L.Ed. 408; Bowers v. Atlantic, G. & P. Co., C.C., 104 F. 887; Cheatham Electric Switching Device Co. v. Transit Development Co., C.C., 191 F. 727. Thus there is little reason to assume that Congress intended to authorize suits in districts other than those mentioned in that Act."

2. Washington v. Miller, 235 U.S. 422, 35 S.Ct. 119, 59 L.Ed. 295; Rodgers v. United States, 185 U.S. 83, 22 S.Ct. 582, 46 L.Ed. 816; Town of Okemah, Okl. v. United States, 10 Cir., 140 F.2d 963; Niagara Fire Ins. Co. of New York, N. Y. v. Raleigh Hardware Co., 4 Cir., 62 F.2d 705; United States v. Mammoth Oil Co., 8 Cir., 14 F.2d 705, affirmed 275 U.S. 13, 48 S.Ct. 1, 72 L.Ed. 137; Ab-

to the time of the enactment of such statutes[3] or the priority of enactment.[4] However, the rule is peculiarly applicable where the statutes are enacted at the same time or about the same time.[5]

■■ It is a well settled rule of construction that where the entire legislation affecting a particular subject matter has undergone revision and consolidation by codification the revised sections will be presumed to bear the same meaning as the original sections.[6] This is true, even though in the course of revision or consolidation the language of the original sections has been changed. Ordinarily, the new language will be attributed to a desire to condense and simplify the text and to improve phraseology.[7] A legislative intent to change meaning will not be inferred unless such intent is clearly and indubitably manifested.[8]

The report of the Committee on the Judiciary of the Senate on H. R. 3214 "Revising, codifying, and enacting into law Title 28 of the United States Code, entitled 'Judicial Code and Judiciary'",[9] in part reads as follows:

"Many noncontroversial improvements have been effected which, while individually small in themselves, add up to a very substantial improvement in and modernization of the law relating to the Federal judiciary. At the same time great care has been exercised to make no changes in the existing law which would not meet with substantially unanimous approval.

\* \* \* \* \* \*

"'\* \* \* Appended to the report are the revisers' notes to each section, together with accompanying tables. These explain in great detail the source of the law and the changes made in the course of the codification and revision."

The report of the Committee on the Judiciary of the House on "Revision of

bate v. United States, 9 Cir., 270 F. 735; Nelden v. Clark, 20 Utah 382, 59 P. 524; University of Utah v. Richards, 20 Utah 457, 59 P. 96.

3. Dallman v. Campbell, 56 Ohio App. 88, 10 N.E.2d 38; State v. Preston, 103 Or. 631, 206 P. 304, 23 A.L.R. 414.

4. United States v. Hess, 8 Cir., 71 F.2d 78, denying rehearing 8 Cir., 70 F.2d 142; Chilson v. Jerome, 102 Cal.App. 635, 283 P. 862; Utah Mining & Mfg. Co. v. Dickert & Myers Sulphur Co., 6 Utah 183, 21 P. 1002, 5 L.R.A. 259.

5. Rodgers v. United States, 185 U.S. 83, 22 S.Ct. 582, 46 L.Ed. 816; University of Utah v. Richards, 20 Utah 457, 59 P. 96; Mayor and Alderman of Jersey City v. Hall, 79 N.J.L. 559, 76 A. 1058; State v. Hammond Packing Co., 110 La. 180, 34 So. 368; Abbate v. United States, 9 Cir., 270 F. 735; Nelden v. Clark, 20 Utah 382, 59 P. 524.

6. Lewis v. Annie Creek Mining Co., 74 S.D. 26, 48 N.W.2d 815; Miller Lumber Co. v. Federal Home Development Co., 231 Wis. 509, 286 N.W. 58, 122 A.L.R. 752; Guardian Agency, Inc., v. Guardian Mut. Sav. Bank, 227 Wis. 550, 279 N.W. 79, 115 A.L.R. 1356; Cf. In re Yonk's Estate, 115 Utah 292, 204 P.2d 452.

7. Lewis v. Annie Creek Mining Co., 74 S. D. 26, 48 N.W.2d 815; Town of Forest

Acres v. Seigler, 224 S.C. 166, 77 S.E.2d 900; State ex rel. Rankin v. Wibaux County Bank, 85 Mont. 532, 281 P. 341, certiorari denied American Surety Co. of New York v. Mullendore, 281 U.S. 725, 50 S.Ct. 239, 74 L.Ed. 1142; United States & Canada Land Co. v. Sullivan, 113 Minn. 27, 128 N.W. 1112; Seminole Phosphate Co. v. Johnson, 188 N.C. 419, 124 S.E. 859; Bassett v. City Bank & Trust Co., 115 Conn. 393, 161 A. 852.

8. McDonald v. Hovey, 110 U.S. 619, 4 S. Ct. 142, 28 L.Ed. 269; United States v. Ryder, 110 U.S. 729, 4 S.Ct. 196, 28 L. Ed. 308; Anderson v. Pacific Coast S. S. Co., 225 U.S. 187, 32 S.Ct. 626, 56 L.Ed. 1047; Gillam v. United States, 4 Cir., 27 F.2d 296, certiorari denied 278 U.S. 635, 49 S.Ct. 32, 73 L.Ed. 552; Reaney v. Union County, 69 S.D. 392, 10 N.W. 2d 762, affirmed rehearing 69 S.D. 488, 12 N.W.2d 14; Lewis v. Annie Creek Mining Co., 74 S.D. 26, 48 N.W.2d 815; Bassett v. City Bank & Trust Co., 115 Conn. 393, 161 A. 852; Lindsay v. United States Savings & Loan Co., 127 Ala. 366, 28 So. 717, 51 L.R.A. 393; Cole v. Sloss-Sheffield Steel & Iron Co., 186 Ala. 192, 65 So. 177.

9. 80th Congress, Second Session, Report No. 1559, Title 28 United States Code Congressional Service Special Pamphlet, p. 1675.

Title 28 U.S.C., 80th Congress, First Session, Report No. 308", states:

"The reviser's notes are keyed to sections of the revision and explain in detail every change made in text. References to court decisions are supplied wherever necessary or appropriate." [10]

Mr. William W. Barron, Chief Reviser of Title 28 U.S. Code, Judiciary and Judicial Procedure, in his article on "The Judicial Code 1948 Revision", said:

"There was no purpose on the part of the Revision staff to effect any change in existing law. Despite this, the process of comprehensively examining and rewriting the Code disclosed some grave disparities, inconsistencies and ambiguities not correctable by mere codification. This was due in part to forty years of piecemeal amendment to the 1911 Judicial Code. Some such problems had manifested themselves in difficult and not wholly satisfactory judicial interpretations. The Reviser and the Advisory Committee, upon discovering situations which would not yield to codification, felt in duty bound to apprise Congress of their findings and recommendations. Consequently, a few such changes, substantive in nature, were recommended to Congress. These were carefully outlined in the Reviser's Notes, and fully considered by the Judiciary Committees of both houses. * * * " [11]

"Because of the necessity of consolidating, simplifying and clarifying numerous component statutory enactments no changes of law or policy will be presumed from changes of language in revision unless an intent to make such changes is clearly expressed.

"Mere changes of phraseology indicate no intent to work a change of meaning but merely an effort to state in clear and simpler terms the original meaning of the statute revised.

"Congress recognized this rule by including in its reports the complete Reviser's Notes to each section in which are noted all instances where change is intended and the reasons therefor." [12]

The Reviser's Notes with respect to § 1400(b) read as follows:

"Subsection (b) is based on said section 109 of title 28 [U.S.C., 1940 ed.], with the following changes:

"Words 'civil action' were substituted for 'suit,' and words 'in law or in equity,' after 'shall have jurisdiction' were deleted, in view of Rule 2 of the Federal Rules of Civil Procedure.

"Words in subsection (b) 'where the defendant resides' were substituted for 'of which the defendant is an inhabitant.' A corresponding change was made in subsection (a). Words 'inhabitant' and 'resident,' as respects venue, are synonymous. (See reviser's note under section 1391 of this title.)

"Words 'whether a person, partnership, or corporation' before 'has committed' were omitted as surplusage."

The Reviser's Notes clearly indicate a mere language change and negative any intent to effect a substantive change.

Pertinent provisions of the Reviser's Notes relative to § 1391 read as follows:

"Section consolidates said section 111 [of title 28, U.S.C., 1940 ed.,] with part of said section 112 [of such title].

*    *    *    *    *    *

"Word 'action' was substituted for 'suit' in view of rule 2 of the Federal Rules of Civil Procedure.

---

10. 80th Congress, First Session, Report No. 308, Title 28, United States Code Congressional Service, p. 1699.

11. 8 F.R.D. 439, 441.

12. 8 F.R.D. 439, 445.

"Word 'reside' was substituted for 'whereof he is an inhabitant' for clarity inasmuch as 'inhabitant' and 'resident' are synonymous. (See Ex parte Shaw, 1892, 145 U.S. 444, 12 S.Ct. 935, 36 L.Ed. 768; Standard Stoker Co., Inc., v. Lower, D.C.1931, 46 F.2d 678; Edgewater Realty Co. v. Tennessee Coal, Iron & Railroad Co., D.C.1943, 49 F.Supp. 807.)"

They indicate no intent to make a substantive change.

The phrase in subsection (c) of § 1391, "in which it is incorporated or licensed to do business," merely writes into the venue section the effect of the decision of the Supreme Court in Neirbo Co. v. Bethlehem Shipbuilding Corp., 308 U.S. 165, 60 S.Ct. 153, 84 L.Ed. 167. The phrase in subsection (c), "or is doing business," extends the philosophy of that case to the act of doing business.

There is nothing in the Reviser's Notes to § 1391 indicating an intent to modify § 1400.

At the hearings before Subcommittee No. 1 of the House Judiciary Committee, Honorable Albert B. Maris, United States Circuit Judge for the Third Circuit, and a member of a committee of the Judicial Conference of the United States to collaborate with the Congressional committees in carrying forward the work of revising Title 28, in part stated: "Care has been taken to make no changes in the existing laws which would not meet with substantially unanimous approval."

At the hearings before such Subcommittee No. 1, James William Moore, Professor of Law at Yale University and a special consultant on the revision of Title 28, stated: "Venue provisions have not been altered by the revision."

An illustration of a plain statement of intention to make a substantive change, where such intention existed, is the Reviser's Notes to § 1398, wherein it is stated, "This section is completely rewritten to give effect to changes recommended by the Judicial Council of the United States." [13]

The principle of waiver announced in Neirbo Co. v. Bethlehem Shipbuilding Corp., supra, prior to the 1948 revision, was repeatedly held to be inapplicable to patent infringement cases. See Blaw-Knox Co. v. Lederle, 6 Cir., 151 F.2d 973; Bulldog Electric Products Co. v. Cole Electric Products Co., 2 Cir., 134 F.2d 545 and Carbide & Carbon Chemicals Corp. v. United States Industrial Chemicals, Inc., 4 Cir., 140 F.2d 47, wherein it was held that 28 U.S.C.A. § 109 was the sole provision governing the venue of patent infringement litigation.

The patent venue statute, as construed in Stonite Products Co. v. Melvin Lloyd Co., 315 U.S. 561, 62 S.Ct. 780, 86 L.Ed. 1026, reflected a sound policy of long standing. It was based on considerations of practicality and convenience in such litigation. A patent infringement action involves a peculiar combination of science or technology and law. In the ascertainment of the pertinent technical facts, it is important that the trial judge have first-hand visual and audible knowledge of the conditions, the environment and the art itself and the testimony of the most competent witnesses. Practicality and convenience are best served when the case is prosecuted where the alleged acts of infringement occurred and the defendant has a regular and established place of business.

An intention on the part of Congress to depart from that policy should not be lightly inferred.

We conclude that it was not intended that § 1400 should be modified or complemented by § 1391(c); that § 1400 is the sole provision governing venue in patent cases; and that a corporate defendant may be sued only in a district of a state in which it is incorporated or a district wherein it has committed acts of infringement and has a regular and established place of business.

---

13. Title 28, United States Code Congressional Service, p. 1850.

The conclusion we have reached is supported by a considerable body of judicial opinion.[14]

Affirmed.

HUXMAN, Circuit Judge (dissenting).

While the question is not free from doubt and is somewhat shrouded in uncertainty, I find myself unable to agree with my Associates.

28 U.S.C.A. § 1400(b)[1] governs the venue of patent infringement suits. Under this section as it was prior to the 1948 Judicial Code revision it was held without exception that the phrase "the judicial district where the defendant resides" had reference to the state of incorporation of a corporate defendant charged with patent infringement. The question is whether the provisions of 28 U.S.C.A. § 1391(c) of the 1948 revision of the Judicial Code, which in substance provides that the place of incorporation, the place in which a corporation is licensed to do business or the place in which it is doing business, shall be regarded as the place of residence of a corporation for venue purposes has application to corporations charged with patent infringement. One line of cases holds that revised Section 1391(c) has no impact on Section 1400(b) and that it stands unimpaired as before with respect to patent infringement suits, while another line of cases holds that the term "resides" in Section 1400(b) is for the first time legislatively defined by Section 1391(c).

Judicial construction should be employed only when there is ambiguity or vagueness in language used. It has no place in the law with respect to language which is clear, unambiguous and logically leads to only one result. Section 1391(c) is general in its application. It applies to corporations without exception. It seems clear to me that it states in clear language that action against corporations without exception may be brought in districts in which they are licensed to do business. The defendant corporation in this case was licensed to do business in the district in which it was sued in this action. But, argues the majority and the cases holding with them, since under the decisions of the courts it had been held that a suit could be brought only in a state of incorporation, the conclusion must be that had Congress intended to change this interpretation it would have so provided in specific language. It is just as logical and more convincing to me that had Congress intended to exempt patent infringement corporate defendants from the effect of the clear language of Section 1391(c), it would, as pointed out by Judge Hall in his opinion in Farr Co. v. Gratiot, D.C.S.D.Cal.1950, 92 F.Supp. 320, 322, have provided " 'except in patent litigation.' "

When we seek support for our views in the legislative history of an act, it is not too difficult to find what we seek. It is pointed out that the revisor's notes are keyed to sections of the revision and point out each substantive change in the various sections. Reliance is placed on the fact that no reference is made to any substantive changes in Section 1400(b). But not all important changes were noted in the revisor's notes. Clearly an important change was made

14. Ackerman v. Hook, 3 Cir., 183 F.2d 11; C-O-Two Fire Equipment Co. v. Barnes, 7 Cir., 194 F.2d 410; Id., 344 U.S. 861, 73 S.Ct. 102, 97 L.Ed. 695; Fischer v. Karl, D.C.E.D.N.Y., 84 F. Supp. 53; Arkay Infants Wear, Inc., v. Kline's, Inc., D.C.W.D.Mo., 85 F.Supp. 98; Rava v. Westinghouse Electric Corp., D.C.S.D.N.Y., 90 F.Supp. 707; Curtis v. Madovoy, D.C.E.D.N.Y., 84 F.Supp. 637; Nachtman v. Jones & Laughlin Steel Corp., D.C.D.C., 90 F.Supp. 739; Gulf

Research & Development Co. v. Schlumberger Well Surveying Corp., D.C.S.D. Cal., 92 F.Supp. 16; Contra: See Guiberson Corp. v. Garrett Oil Tools, Inc., 5 Cir., 205 F.2d 660, certiorari denied 346 U.S. 886, 74 S.Ct. 137, 98 L.Ed. 390, rehearing denied 346 U.S. 917, 74 S.Ct. 273, 98 L.Ed. 413; Dalton v. Shakespeare Co., 5 Cir., 196 F.2d 469.

I. This section is set out in the majority opinion and need not be repeated herein.

in Section 1391(c), yet the revisor's notes do not call attention to this change.

I can add nothing new to Judge Lindley's able dissenting opinion in C-O-Two Fire Equipment Co. v. Barnes, 7 Cir., 1952, 194 F.2d 410, 415, or to the logic of Judge Hall's opinion in Farr Co. v. Gratiot, D.C.S.D.Cal.1950, 92 F.Supp. 320, or to the opinion of the Fifth Circuit in Dalton v. Shakespeare Co., 196 F.2d 469. Until the question is finally settled by the Supreme Court, I adhere to the views expressed in these cases and, therefore, respectfully dissent.