TRANSMIRRA PRODUCTS CORP. and
Robert Aronstein, Plaintiffs-
Appellants,

v.

FOURCO GLASS CO., Defendant-
Appellee.

No. 315, Docket 23836.

United States Court of Appeals
Second Circuit.

Argued April 12, 1956.

Decided May 14, 1956.

Stanley N. Ohlbaum, New York City (Aronstein & Aronstein, Robert Aronstein, and William B. Aronstein, New York City, on the brief), for plaintiffs-appellants.

Vernon H. Doane, Washington, D. C. (Robert E. Burns, New York City, Edward S. Irons and James P. Burns, Washington, D. C., and Charles B. Johnson, Clarksburg, W. Va., on the brief), for defendant-appellee.

Before CLARK, Chief Judge, and HINCKS and LUMBARD, Circuit Judges.

CLARK, Chief Judge.

Plaintiffs appeal from the dismissal, for want of venue in the court below, of their action for patent infringement brought against a West Virginia corporation. In granting the defendant's motion to dismiss, Judge Dawson ruled that plaintiffs had shown no acts of infringement committed by the defendant in the Southern District of New York, although he did point out that it maintains a sales office in the district and by the regular and continuous course of activity there may be said to have a regular and established place of business therein. D.C.S.D.N.Y., 133 F.Supp. 531. Since, disagreeing with the judge's interpretation of the governing legislation, we hold that the defendant "resided" in the district within the applicable statutory definition of venue, we shall not consider his ruling with respect to the absence of local acts of infringement.

The governing statutes here, found in Chapter 87 of Title 28 U.S.Code entitled, "District Courts; Venue," are the ones dealing with "Venue generally"

and with "Patents and copyrights." From the first we have the provision:

"A corporation may be sued in any judicial district in which it is incorporated or licensed to do business or is doing business, and such judicial district shall be regarded as the residence of such corporation for venue purposes." 28 U.S.C. § 1391(c).

And from the second we have the following:

"Any civil action for patent infringement may be brought in the judicial district where the defendant resides, or where the defendant has committed acts of infringement and has a regular and established place of business." 28 U.S.C. § 1400(b).

As was held with respect to earlier legislation, the second provision should control here. Stonite Products Co. v. Melvin Lloyd Co., 315 U.S. 561, 62 S.Ct. 780, 86 L.Ed. 1026. Even so, that requires but the insertion in it of the definition of corporate residence from the first provision [1]—just as that definition is properly to be incorporated into other sections of the venue chapter, e. g., §§ 1392, 1393, 1395, 1396, 1397, 1400, etc.[2] Hence the plain meaning of the two statutes, when read together, would be that this defendant may be sued in New York, where it "is doing business."

Such, we think, is the proper interpretation of the legislative mandate, fortified, indeed, upon consideration of the background and general purpose of the 1948 statutory revision. But there has arisen a serious difference of opinion, many eminent judges reading the statutes as intending no change in the former law, wherein the corporation was an "inhabitant" only of its state of incorporation. Able exponents of this view are Chief Judge Phillips in Ruth v. Eagle-Picher Co., 10 Cir., 225 F.2d 572, with Judge Huxman dissenting, and Chief Judge Major in C-O-Two Fire Equipment Co. v. Barnes, 7 Cir., 194 F.2d 410, with Judge Lindley dissenting, affirmed by an equally divided court, Cardox Corp. v. C-O-Two Fire Equipment Co., 344 U.S. 861, 73 S.Ct. 102, 97 L.Ed. 668; see also Ackerman v. Hook, 3 Cir., 183 F.2d 11. Opposed and expressing the view with which we agree are Dalton v. Shakespeare Co., 5 Cir., 196 F.2d 469, and Guiberson Corp. v. Garrett Oil Tools, 5 Cir., 205 F.2d 660, certiorari denied 346 U.S. 886, 74 S.Ct. 137, 98 L.Ed. 390,[3] as well as the text writers in general. See Note, Doing

1. As the Reviser's Note to § 1400(b) indeed suggests, in pointing out the identity of "resident" with "inhabitant" of the former law and making a specific cross-reference to the like explanation in the Note to § 1391.

2. See discussion in the Note cited in the text infra, 56 Col.L.Rev. 394, 412, 413 (1956), also analyzing acutely other special venue provisions, including that of the Jones Act, 46 U.S.C. § 688, permitting suits in the district in which the defendant employer resides or in which his principal office is located. "Since the doing business test of section 1391(c) defines residence, can it be applied here when to do so would make superfluous the last clause of the special provision? The decisions are uniform in holding that it can." 56 Col.L.Rev. 394, 413 (1956), citing cases.

3. The cases cited do not exhaust the judicial precedents, for there are several district court decisions, also divided. Compare, e. g., Farr Co. v. Gratiot, D.C. S.D.Cal., 92 F.Supp. 320, per Hall, J., for the construction stated in the text, and Pierce v. Perlite Aggregates, Inc., D.C.N.D.Cal., 110 F.Supp. 684, per Lemmon, J., opposed. The case of Gulf Research & Development Co. v. Schlumberger Well Surveying Corp., D.C.S.D. Cal., 92 F.Supp. 16, per Harrison, J., also opposed, had a checkered career, as its transfer to Delaware, D.C.S.D.Cal., 10 F.R.D. 353, was unsuccessfully opposed by mandamus—a remedy refused because of lack of extraordinary circumstances. Gulf Research & Development Co. v. Harrison, 9 Cir., 185 F.2d 457; Gulf Research & Development Co. v. Schlumberger Well Surveying Corp., D.C.Del., 98 F.Supp. 198, per Leahy, J.; Gulf Research & Development Co. v. Leahy, 3 Cir., 193 F.2d 302, affirmed by an equally divided court, 344 U.S. 861, 73 S.Ct. 102, 97 L.Ed. 668.

Business as a Test of Venue and Jurisdiction over Foreign Corporations in the Federal Courts, 56 Col.L.Rev. 394, 413–416 (1956); 47 Nw.L.Rev. 699–705 (1952); 21 Geo.Wash.L.Rev. 610 (1953); Seidel, Venue in Patent Litigation, 22 Geo.Wash.L.Rev. 682, 697 (1954); 3 Moore's Federal Practice 2139, 2140 (2d Ed. 1948); Moore's Commentary on the U. S. Judicial Code 178, 179, 184, 185 (1949).

The stated reason chiefly relied on for the judicial conservatism thus displayed, namely, that the revision of Title 28 was often declared by those participating to be in the main declaratory only, without change of substance, can properly apply only where there was not change of substance; correctly understood in the light of the background of the revision, it here actually cuts the other way. For, as is well understood, an editorial staff from two law publishing firms did the initial task of revision for the legislative committee and naturally limited its work to revision proper. But, as also well understood, various suggestions coming from the staff or special consultants or scholars were adopted and, where occurring, made sharp breaks with the past. This is developed with extraordinarily complete documentation by Chief Justice Vinson in a case so analogous as to be authoritative here. Ex parte Collett, 337 U.S. 55, 61–71, 69 S.Ct. 944, 93 L.Ed. 1207, 10 A.L.R.2d 921, upholding the general applicability of another provision of this Venue chapter, 28 U.S.C.

§ 1404(a), providing for a change of venue for the convenience of parties and witnesses. In fact the same idea is expressly stated or conceded, under the rubric, applying to situations "which would not yield to codification," of "a few such changes, substantive in nature," by Chief Reviser Barron, in his quoted article, The Judicial Code: 1948 Revision, 8 F.R.D. 439, 441.[4] Among such important changes, that making corporations suable where they do business is of course outstanding.

The rationale of this sharp break with ancient formulae is quite obviously a response to a general conviction that it was "intolerable if the traditional concepts of 'residence' and 'presence' kept a corporation from being sued wherever it was creating liabilities." See the Note cited supra, 56 Col.L.Rev. 394, at 395 (1956). As this authority points out, the particular attack on the problem here is in terms of venue, with which is allied the issue of personal jurisdiction over corporations.[5] But, as we know, the ramifications are yet more general; for there have long been debated proposals to substitute for the famous fiction making a corporation a citizen or inhabitant of the perhaps remote state of its incorporation the more realistic test for substantive jurisdiction itself of the place or places of corporate activity or doing business. See Frankfurter, J., in Lumbermen's Mutual Casualty Co. v. Elbert, 348 U.S. 48, 56, 75 S.Ct. 151, 99 L.Ed. 59, discussing, *inter alia*, the proposals of

4. Cited and quoted in Ruth v. Eagle-Picher Co., 10 Cir., 225 F.2d 572, though Ex parte Collett, 337 U.S. 55, 69 S.Ct. 944, 93 L.Ed. 1207, 10 A.L.R.2d 921, is not. The Ruth case also quotes similar generalities from Professor Moore, apparently overlooking his specific views adverse to that decision, as noted in, e. g., 56 Col.L.Rev. 394, at 414, and cited in the text. Unfortunate consequences of too restricted a construction of the new revision have also appeared elsewhere. See Telechron, Inc. v. Parissi, 2 Cir., 197 F.2d 757, 761, overruling the narrow construction of Kleinman v. Betty Dain Creations, 2 Cir., 189 F.2d 546, of

the "pendent jurisdiction" provisions of 28 U.S.C. § 1338(a) with respect to claims of unfair competition; and see also Note, Curtailing the Scope of 1404–A—Round Two, 60 Yale L.J. 183–188.

5. The suggestion found, as in Ruth v. Eagle-Picher Co., 10 Cir., 225 F.2d 572, that § 1391(c) but writes into the venue section the effect of Neirbo Co. v. Bethlehem Shipbuilding Corp., 308 U.S. 165, 60 S.Ct. 153, 84 L.Ed. 167, 128 A.L.R. 1437, as to waiver of venue is obviously inadequate as an explanation; the change is perfectly consistent with the Neirbo decision, but goes much beyond it.

that distinguished lawyer and statesman, the late Attorney General Mitchell; and see in detail, McGovney, A Supreme Court Fiction, 56 Harv.L.Rev. 853, 1090, 1225, 1231–1238, 1251, 1252 (1943). So extensive has been the dispute, so voluminous the literature, that even partial steps to correct what has been so thoroughly and exhaustively condemned as unjust would seem deserving of support. No reason appears, therefore, why we should strain to discover unexpressed exceptions to this beneficial principle, which could so easily have been expressed, had they been intended.[6]

Moreover, recognition of such exceptions is unreasonable, since all the grounds supporting the general rule appear fully as applicable to all the special cases, including patent infringement.[7] And it presents a really acute problem as to how far such special exceptions should themselves be extended. It does seem odd drafting, to say the least, to add after a general and unlimited defining statute a series of eight or ten exceptions—all unexpressed as such, but each destroying the generality of the first provision. For precisely the same problem can be raised—even though this does not seem to have been generally perceived—as to the series of special venue statutes in this chapter, as well as those elsewhere stated, such as seamen's suits under the Jones Act.[8] It hardly seems possible—and the cases do not support the view—that Congress intended any such inroad on its general principle as to take out all these situations; nor is

there any ground for distinguishing between, e. g., claims for patent infringement, for unfair competition, or for violation of the antitrust laws, which might properly come up in a single suit and be conveniently disposed of together. We conclude with the text writers that the general definition of corporate residence applies here also.

We should notice a final argument occasionally made, that the construction supported by plaintiffs will render the second alternative of § 1400(b) of no practical utility. Having in mind the manner in which the new Code was prepared, as stated above, it seems doubtful if any deduction of importance is to be drawn from the mere circumstance of continuance of provisions useful in the earlier legislation, 28 U.S.C. former § 109; and no such deduction has been made with reference to the provision for venue of cases under the Jones Act, as we have seen.[9] But it is quite clear that this alternative provision does have a sphere of decided usefulness in litigation against noncorporate defendants, and some provision of this nature was imperative. 56 Col.L.Rev. 394, 415 (1956).[10]

Because its literal wording thus coincides with the legislative purpose, viewed in historical perspective, to support a patent infringement suit where the venue is laid in the federal district in which the corporate defendant is doing business, the judgment below must be reversed and the action remanded for further proceedings not inconsistent with this opinion.

---

6. Note that in the earlier subdivisions of § 1391, viz., (a) and (b), specific exceptions are made for other provisions of the law.

7. However exclusive it may be, the patent jurisdiction statute itself, § 1400(b), did bring in a new concept making the place of the wrong important. See Stonite Products Co. v. Melvin Lloyd Co., 315 U.S. 561, 62 S.Ct. 780, 86 L.Ed. 1026.

This hardly suggests special privileges for patent infringers.

8. As explained in footnote 2 supra.

9. See footnotes 2 and 8 accompanying text supra.

10. Even for corporate defendants, the two provisions are not identical; and "having a regular and established place of business" may not always be synonymous or coextensive with "doing business."