BLANCHARD, BREAUX, MONROE, and PROVOSTY, JJ., concur in the decree.

---

(34 South. 368.)

No. 14,384.

STATE et al. v. HAMMOND PACKING CO.*

(March 2, 1903.)

LICENSE FEE—STATUTE — REPEAL — NONRESIDENTS—CORPORATIONS—EQUAL PROTECTION OF THE LAWS—COMITY—REGULATION OF COMMERCE.

1. Acts 1898, p. 387, No. 171, approved July 14, 1898, did not repeal by implication Act No. 127 (p. 192) of the same month and year.

2. These statutes are not inconsistent with or repugnant to each other.

3. Citizens of other states exercising corporate privileges granted by this state (in which they reside) may be taxed in the state other than that of the domicile in which they carry on branches of their business.

4. Article 242 of the Constitution and Acts 1898, p. 192, No. 127, do not deny to corporations doing business here, but domiciled out of the state, the equal protection of the laws.

5. A corporation cannot carry on business in another state than that of its domicile, except through the comity existing among the states. This comity may be modified or withdrawn under statute enacted in pursuance of an article of organic law (Bank of Augusta v. Earle, 13 Pet. 588, 10 L. Ed. 274), provided the modification or withdrawal does not come in conflict with the paramount laws of the Union.

6. The clause of the federal Constitution declaring that the citizens of each state shall be entitled "to all privileges and immunities of citizens in the several states," does not have the effect of invalidating the license tax claimed by the state.

7. While it may be true, as a matter of principle, that the taxation should be laid for the purpose of revenue, by an equal and uniform mode, yet, as to licenses imposed for regulation, prohibition, or revenue, levied as they are under the police power, the principle of equality and uniformity has been found, as to its enforcement, impracticable by the lawmaking power.

8. The imposition of a license is particularly a legislative function, not to be interfered with except in cases of clear illegality.

9. In this instance no provision of the Consti-

---

tution of the state is violated; on the contrary, the imposition of the license is authorized by that instrument.

10. The power of exclusion includes the lesser power of imposing a license on the business of a corporation domiciled out of the state. Bank of Augusta v. Earle, 13 Pet. 588, 10 L. Ed. 274; Ducat v. Chicago, 10 Wall. 410, 19 L. Ed. 972.

11. In matter of licenses the state may determine the degree of discrimination, subject only to such limitations on her sovereignty as may be found in the fundamental law of the land. Fire Insurance Company v. New York, 7 Sup. Ct. 108, 119 U. S. 110, 30 L. Ed. 342.

12. Although the state cannot compel persons of other states to pay the tax or contribution for the privilege of having their goods transported through the state by the ordinary agencies of commerce, a license imposed on their carrying on a local business in the state is not a regulation of commerce.

13. The regulation of their interior commerce is left to the states.

(Syllabus by the Court.)

Appeal from Civil District Court, Parish of Orleans; Walter B. Sommerville, Judge.

Action by the state and the state tax collector against the Hammond Packing Company. Judgment for defendant, and plaintiffs appeal. Reversed.

Hugh C. Cage, for appellants. Pierson & Pierson, for appellee.

BREAUX, J. Plaintiff demands of the defendant the payment of a license; also fee of attorney, and interest for the years 1899, 1900, and 1901, respectively.

The demand is made under Acts 1898, p. 192, No. 127, approved July 13, 1898, being a statute (under article 242 of the Constitution) "to levy an annual license tax upon certain classes of corporations doing business within the state, whose domiciles are in other states or foreign countries."

The section 8 of the statute which the tax collector seeks to enforce, provides:

"That all associations, corporations, or companies outside of this state, who directly or through an agent, or representative deal in fresh meats, cured, salted, or smoked meats, or canned meats, shall pay an annual license of two dollars for each one thousand dollars of proceeds from all business done in this state."

The defendant pursues the business of wholesale dealer in salted, dried, smoked, and canned meats since the year 1894. Its customers are in Louisiana and adjacent states. Its principal place of business and domicile is in Indiana. It has an agent in Louisiana, and it has complied with the laws of the state requiring corporations whose domiciles are not in this state to appoint a resident agent upon whom persons may have process served.

The defendant has paid all its licenses to the state to 1902, under Acts 1898, p. 387, No. 171, on an assessment of $50 per annum upon its annual gross receipts.

We have seen that plaintiff claims licenses under Acts 1898, p. 192, No. 127. Defendant's contention is that this statute has been repealed by Act No. 171, p. 387, of the same session.

The first ground of dispute between plaintiff and defendant grows out of defendant's contention that Acts 1898, p. 387, No. 171, approved July 14, 1898, supersedes and impliedly repeals Act No. 127, p. 192, of the same session, approved July 13, 1898.

Manifestly, it was not the legislative will to repeal Act No. 127, p. 192, in question.

The member who introduced Act No. 127 introduced at the same time Act No. 171. They were both referred to the same committee, and were reported back to the General Assembly on the same day. They were adopted in the House and Senate as companion bills, and were sent up on the same day to the chief executive for his approval. We have seen that Act No. 127 was approved by the executive on one day and Act No. 171 on the next.

Nothing gives rise to the inference that it was the intention of the chief executive, in approving them on different days, to let one have precedence of the other, and thereby to let his approval have the effect of repealing Act No. 127.

We readily grant that the legislative intent is not always controlling. The lawmaking power may stumble, and unintentionally repeal the act it intended to enact. An act passed at the same time may be repugnant to another, and it may be thereby repealed. The words must be given the meaning they usually convey, regardless of the intention, when the intention is at right angle with the language used.

As, for instance, there may be irreconcilable conflict between sections (or part of the

same statute), and, a fortiori, between statutes. Sedgwick (2d Ed.) p. 105.

We are particular upon the subject of statutes enacted at the same time, because counsel at bar for the state dwelt upon the legislative intent as entitled to controlling weight. We do not agree with that view for reason before mentioned.

We will add here, however, that statutes adopted at the same time are usually deemed less likely to conflict. Sutherland, §§ 151, 153.

In the present case we have not found that there is variance between the intention of the Legislature and the words used to convey that intention.

The following are our reasons for holding that these Acts Nos. 127 and 171 are not, in a legal sense, conflicting: The provision of Act No. 127 was adopted in accordance with the mandate of the organic law expressed in article 242, which ordains that corporations domiciled out of the state, carrying on business in the state, may be licensed differently from home corporations.

This was a special enabling act, relating to a special class created by the text of the article of the Constitution before cited. Corporations domiciled out of the state carrying on business here are distinguished from home corporations. The Legislature has followed this up by enacting a special law relating to foreign corporations. But, on the other hand, Act No. 171 in question is a general license law, to which all corporations are subject, except foreign corporations carrying on business here whose domicile is out of the state.

The section pleaded by defendant as a repealing section, viz., 6 of Acts 1898, p. 393, No. 171, when considered with reference to the whole text of that statute and with Act No. 127, may well be interpreted to read as follows, viz.: That every wholesale mercantile business, not included within the terms of Act No. 127, is to be licensed as set forth in the Act No. 171. To our best thinking, the rules of interpretation sustain that view, for the general intention here in Act No. 171 is not incompatible with the particular intention in Act No. 127. The provisions of both acts can stand together; one relating to foreign, and the other to home, corporations.

"In order to be considered repealed, the special act must conflict with the general act." Sutherland, § 158.

In the case in hand we have not found an irreconcilable conflict between the two acts.

"The general law can have full effect beyond the scope of the special law, and, by allowing the latter to operate according to its special aim, the two acts can stand together." Id.

Again: "Unless there is plain indication of an intent that the general act shall repeal the other, it will continue to have effect, and the general words with which it conflicts will be restrained and modified accordingly." Id.

A painstaking analysis of the two acts has not resulted in our finding unavoidable repugnancy between them. The words "for every wholesale mercantile business," to copy from Act No. 171, § 6, can be restrained and modified under the text so as not to conflict with Act No. 127.

The following are well-known rules of interpretation, which have some application, viz.:

"Repeals by implication are not favored."

"But though it is thus clearly settled that statutes may be repealed by implication, and without express words, still the leaning of the courts is against the doctrine, if it be possible to reconcile the two acts of the Legislature together." Sedgwick, p. 105.

It has been declared that one act of the General Assembly is held to repeal another by implication only in cases of very strong "repugnancy or irreconcilable inconsistency." Sedgwick, p. 105.

The charge of unlawful discrimination in favor of home corporations—another issue urged by defendant—seeks to find its support mainly in the fourteenth amendment of the Constitution of the United States.

Our answer to this is that licenses have been divided into classes in this state since the year 1879.

Professions, trades, and other occupations have been grouped in accordance with special legislation. The original grouping has been retouched, and the Legislature has transferred interests or business from one group to another. Other business and interests have been added as subject to license

under the particular group in which they are placed. Complaints have been heard from license payers on the ground of inequality.

Courts, for good reason, have not been hasty to set aside the levy of license on the ground that the law imposed greater burden on one branch of industry than on another, unless in the case of illegality, or downright wrong from a legal point of view, interference with the enforcement of the law in this respect would scarcely be justifiable.

The organic law of 1879 (article 217) contained the article regarding license taxes of foreign corporations, which was reinserted in the organic law of 1898 (article 242). It remained dormant in the organic law, but nothing was done towards its execution under the Constitution of 1879. In 1898, after the Constitutional Convention had adjourned, the Legislature took up the subject, and the result was that the act complained of by defendant became a law.

With the reason or policy of the Legislature, whether wise or unwise, we have little to do. Whether it was because foreign companies may have less burden here than the home corporations, whose whole stock in trade and other property is exposed to the eye of the assessor or collector, or whether other reasons prevailed, we will not discuss at any great length.

We propose to deal with the authority of the law-making power to license and tax corporations out of the state, but doing business in the state, in a different group from those in which home corporations are classed, and right of the state to levy a larger amount from foreign corporations than exacted of home corporations.

We will state preliminarily that which no one will seriously deny—that a corporation domiciled out of the state may be prohibited from carrying on business in this state.

Unquestionably, other states than the state of the company's domicile may prevent them from doing business within their territory.

In Paul v. Virginia, 8 Wall. 177, 19 L. Ed. 357, the complaint was that in the state of Virginia decided preference was shown to the home companies, to the extent that the law conflicted with the constitutional provision of the United States government, which provides that "the citizens of each state shall be entitled to all the privileges and immunities of citizens in the several states," and that upon Congress "was conferred the power to regulate commerce with foreign nations and among the several states."

The court in that case decided that corporations must dwell in the place of their creation, and cannot, as a matter of absolute right, move to another sovereignty. The whole matter rests with the state. It may absolutely exclude the corporation organized in another state. This decision was strongly affirmed in Ducat v. Chicago, 10 Wall. 415, 19 L. Ed. 972. This reaffirmance was made after the "fourteenth amendment" of 1868, had been adopted.

Again, in another well-considered case it was held: "The state may deny foreign corporations the right to transact their business, hold property, or exercise any corporate function within its limits." Oliver v. Insurance Co., 100 Mass. 538.

It does seem that, having the right to exclude, the state has the right to classify, these corporations in a separate class, and tax them then on a different basis from other companies.

With reference to classification in matter of licenses, separate classification, under the Acts of 1898, p. 192, No. 127, is authorized by no less an authority than the Constitution itself, which is the solemn compact between the people and those by whom the laws are executed and administered; a sovereign grant of charter, which is not to be considered null in any particular unless on ground most cogent and convincing.

In classifying these corporations, the state has not withdrawn the protection of her laws from the companies—a right protected by the fourteenth amendment. She has only imposed a condition regarding license taxes, which is not prohibited by the fourteenth amendment.

The Supreme Court of the United States held as follows: "We think that we are safe in saying that the fourteenth amendment was not intended to compel the state to adopt an iron rule of equal taxation." Bell's Gap R. Co. v. Pennsylvania, 134 U. S. 237, 10 Sup. Ct. 535, 33 L. Ed. 892. And our court has repeatedly decided that equality in license is impracticable.

The Supreme Court of the United States has properly, as we think, sought by its ut-

terances to impress the view that taxes imposed for revenue should be equal, and that there should be no discrimination. The court, however, has not laid down that principle in matter of license taxation, and has not decided that provisions for equality are applicable to license tax.

As relates to the asserted violation of the fourteenth amendment because defendant corporation has the right of a citizen, we deem it sufficient answer to hold that corporations are not entitled to the privilege of citizens, save in the matter of jurisdiction to enable them to appear in the courts.

This is the view expressed in a number of well-considered cases, notably in Paul v. Virginia, supra (on another point), in which the court said corporations are not citizens in the sense the word is used in the Constitution of the United States, except for the purpose of maintaining jurisdiction.

For the sake of some brevity upon the subject, we quote from the syllabus in Bank of Augusta v. Earle, 13 Pet. 519, 10 L. Ed. 274; "Though all the corporations are citizens of the state which created the corporation, the artificial being created by the charter cannot claim the right of the corporators as citizens of the United States to make contracts in other states."

"License may be imposed as to a matter of regulation; it may be levied for income; it may be exacted in order to confer exclusive right and establish monopoly; it may be laid on for the purpose of bringing on prohibition." Cooley on Taxation, verbo "License."

The monopoly feature mentioned by this commentator does not recommend itself under a free government, and is only mentioned because referred to by this commentator.

The other purposes—regulation, revenue, prohibition—are sanctioned by the law under varying conditions.

We will not stop to discuss the policy or impolicy of the purposes just mentioned. They are admissible, and left in great measure to legislative discretion. It is not for us to decide whether the license was intended to carry out or enforce one or the other of these different purposes in the present case, as it is a matter within legislative discretion.

Able counsel for defendant cites Connolly v. Union Sewer Pipe Company, 184 U. S. 558, 561, 22 Sup. Ct. 431, 46 L. Ed. 679, and Cot-

ting v. Kansas City Stock Yards Co., 183 U. S. 79, 22 Sup. Ct. 30, 46 L. Ed. 92, with great confidence.

We have carefully read them. In the first of these cases the Union Sewer Pipe Company, an Ohio corporation, brought its action against a citizen of Illinois on notes given him on account of his purchase of sewer pipes from the plaintiff.

He conceived the novel idea of defending himself on the ground that plaintiff could not recover because its general business was carried on in violation of a public statute directed against trusts and monopolies. This defense he urged in place of paying a quid pro quo for his pipes.

The court did not lend its approval to the plan adopted to escape from the payment of his indebtedness. The court held that the act invoked to escape payment did not declare illegal and void any sale made by combination of firms in business or its agent.

In the second place, in reference to the interstate commerce act invoked by defendant, the court held that the property was not at the time in the course of transportation from one state to another; that the buyer could not avoid payment by pleading the asserted violated statute against trust and combination. The cited case on the point sustains our view. We will take up this point in a moment.

In the second case cited above (the Cotting Case) two citizens of Massachusetts, natural persons, became vigorous as litigants, and leveled their attacks against the Kansas City Stockyards Company and against the state of Kansas, through its attorney general. These citizens, plaintiffs in the action, were stockholders of this company. Their main purpose was to have decided illegal an "act defining what shall constitute public stockyards."

The main question was, has the state the power to reduce the charges of the stockyard companies? It seems that this statute assumed to regulate a corporation, and that one company which did much business was regulated, while another doing less was not regulated. This was the issue. The court held that the statute of Kansas was in violation of the fourteenth amendment. The decision is elaborate, and contains a clear and interesting résumé of a number of decisions.

·One of these decisions (cited in the Cotting Case) lays down the following on the subject of uniformity, bearing on the issues here.

Defendant in our case, it will be borne in mind, complains of the lack of uniformity in the license on foreign corporations upon this point.

Upon this point we quote from the decision ·on that subject:

"But this lack of uniformity in the result furnishes no ground of complaint under the federal Constitution. Suppose, for any fair reason affecting only its internal affairs, the state should see fit to wholly exempt certain named corporations from all ·taxation. Of course, the indirect result would be that all ·other property might have to pay a little larger rate per cent. in order to raise the revenue necessary for the carrying on of the ·state government; but this would not invalidate the tax on other property, or give any right to challenge the law as obnoxious to the provisions of the federal Constitution." Merchants' Bank v. Pennsylvania, 167 U. S. 461, 463, 17 Sup. Ct. 829, 42 L. Ed. 236; cited in Cotting v. Kansas City Stock Yards Co., 183 U. S. 111, 22 Sup. Ct. 43, 46 L. Ed. 92.

And the decision goes on to state:

"So, again exercising the undoubted right ·of classification, it may often happen that some classes are subject to regulations, and ·some individuals are burdened with obligations which do not rest upon other classes or ·other individuals similarly situated. License ·taxes are imposed on certain classes of business, while others are exempt. It would practically defeat legislation if it was laid down as a rule that a statute was necessarily adjudged invalid if it did not bring all within its scope or subject all to the same burdens. It would strip the Legislature of its inherent power to determine generally what is for the general interests, which interests may ·often be promoted by certain regulations affecting one class which do not affect another —certain burdens imposed on one which do not rest upon the other." Cotting v. Kansas ·City Stock Yards Co., 183 U. S. 111, 22 Sup. ·Ct. 30, 46 L. Ed. 92; citing approvingly Merchants' Bank v. Pennsylvania, 167 U. S. 461–463, 17 Sup. Ct. 829, 42 L. Ed. 236.

We think the case here falls within the view above expressed in the decision from which we quote. It is well settled that provision for equality is not generally applicable to license tax.

The defendant, on another ground of defense, pleads the prohibition of interstate law. The case in hand does not fall within the prohibition invoked. Defendant's branch business is one established in the city of New Orleans, and carried on within the limits of this state, where, it is true, it sells to all comers without regard to state limits.

The state has the right to regulate its internal commerce, and a license for the privilege of doing business within its limits is not a regulation of commerce. · There is no commerce between the state here in question. The business of the defendant in this state is exclusively local in character.

The packages offered for sale are brought here broken, and sold in the usual way of carrying on business within the state.

We have considered all the grounds urged by the defendant. No alternative is left us save to reverse the judgment. We do not think the authorities could sustain a different decree. We are pleased that, if we are in error, the Supreme Court of the United States can correct the error.

It is therefore ordered, adjudged, and decreed that the judgment appealed from is avoided, annulled, and reversed.

It is further ordered, adjudged, and decreed that defendant is liable for licenses under Acts 1898, p. 192, No. 127, and is condemned to pay plaintiff, first, the sum of $500 for the year 1899, less $175 already paid for that year; and, second, the sum of $500 for the year 1900, less $25 license heretofore paid for that year, and $500 for the year 1901, less $25 license paid for that year—together with 2 per cent. per month interest on each balance from March 1st of the year for which same is due, and 10 per cent. attorney's fee on the whole amount, principal and interest, with recognition of the state's first mortgage and first lien and privilege on the property of defendant company.

Defendant is also condemned to pay cost of both courts.