100 So.2d 221

Dave H. EWELL (Louisiana Agricultural Supply Co., Inc.)

v.

BOARD OF SUPERVISORS OF LOUISIANA STATE UNIVERSITY AND AGRICULTURAL AND MECHANICAL COLLEGE.

No. 43742.

Feb. 10, 1958.

D'Amico & Curet, Baton Rouge, for plaintiffs-appellants.

Taylor, Porter, Brooks, Fuller & Phillips, Baton Rouge, for defendant-appellee.

SIMON, Justice.

The appellants seek to enjoin the Board of Supervisors of Louisiana State University and Agricultural and Mechanical College (hereinafter called Board of Supervisors of L. S. U.) from issuing and selling certain bonds under and by virtue of a resolution adopted by it, duly authorized under the provisions of Act 230 of 1954, the constitutionality of which is assailed herein.

Act 230 of 1954 authorizes the sale of bonds aggregating $850,000 for the purpose of constructing, furnishing, and equipping certain buildings on the campus of the University at Baton Rouge, Louisiana; of providing facilities for carrying out the duties and responsibilities of the state chemist as set forth in LSA–R.S. 3:1024, 3:1025, 3:1312, 3:1892 and Act 501 of 1952 (LSA–R.S. 3:1601–1609); and for the housing of the State Seed Laboratory. For the payment of said bonds the said Sec. 9 of Act 230 of 1954 authorizes the pledging of revenues to be received from the enforcement of LSA–R.S. 3:1311–1318, LSA–R.S. 3:1891–1898 and LSA–R.S. 3:1601–1609 (Act 501 of 1952), which statutes respectively provide regulations for the sale of fertilizers, commercial feeds and pesticides.

The relator and intervenor contend that the above three agricultural statutes are regulatory statutes, designed and intended for the public protection and welfare and enacted in the exercise of the state police power, and that therefore the pledging of the revenues as above stated constitutes a prohibitive abridgment of the exercise of the police power of the State. LSA–La. Const. of 1921, Art. 19, Sec. 18.

The respondent contends that the licenses, fees and penalties levied under the said feed, fertilizer and pesticide statutes, were levied in an exercise of the taxing power enjoyed by the Legislature, and that therefore Act 230 of 1954, pledging said revenues, is constitutional. La.Const. of 1921, Art. 10, Sec. 1.

The district court sustained the contention of the respondent.

It is conceded that the State has the authority to levy licenses, fees and penalties for the sale and inspection of fertilizer, feeds and pesticides either as revenue-producing measures under the taxing power of the Legislature, or as regulatory measures under its police power. It is also conceded that the constitutionality of Act 230 of 1954 hinges on whether the said levies were imposed as revenue-producing or regulatory measures. If the former, then Act 230 of 1954 is constitutional and the respondent has been properly authorized thereunder to borrow money and pledge the proceeds of the levies so dedicated by

it to secure the payments of the bonds or other evidences of indebtedness. If the latter, then the said act is unconstitutional in that any enactment by the Legislature that pledges the proceeds of charges imposed under its police power would constitute an impairment thereof and specifically contravene Art. 19, Sec. 18 of the La.Const. of 1921.

It is fundamental under our system of law that the power of taxation is vested exclusively in the Legislature. La.Const. of 1921, Art. 10, Sec. 1.

A license may be defined as the formal permission granted by a sovereign, generally for a consideration, to a person, firm or corporation, to pursue some occupation or to carry on some business without which the act permitted would be illegal. City of Shreveport v. Brister, 194 La. 615, 194 So. 566; Monsour v. City of Shreveport, 194 La. 625, 194 So. 569.

There are two kinds of licenses, one of which requires a license fee imposed for the purpose of raising revenue, and the other imposed as a police regulation. Parish of East Feliciana v. Levy, 40 La.Ann. 332, 4 So. 309; State v. Hammond Packing Co., 110 La. 180, 34 So. 368; State v. American Ry. Express Co., 159 La. 1001, 106 So. 544; Lionel's Cigar Store v. McFarland, 162 La. 956, 111 So. 341; Giamalva v. Cooper, 217 La. 979, 47 So.2d 790. A license imposed for revenue is an exercise

of the taxing power and is in effect a tax. La.Const. Art. 10, Secs. 1 and 8. Parish of East Feliciana v. Levy, supra; State v. Schofield, 136 La. 702, 67 So. 557; Mouledoux v. Maestri, 197 La. 525, 2 So. 2d 11. A license imposed for the purpose of regulation and the protection of the public health, morals and general welfare is an exercise of the police power of the State. State v. Schofield, supra; City of Shreveport v. Brister, supra; De Gruy v. Louisiana State Board of Pharmacy, 141 La. 896, 75 So. 835.

An examination of the fertilizer statute (LSA–R.S. 3:1311–1318) discloses that it provides regulations for the sale of commercial fertilizer in the State of Louisiana, defines the powers and responsibilities of the Commissioner of Agriculture and Immigration and of the state chemist, and imposes licenses, fees, fines and penalties in connection with the sale thereof. In particular, LSA–R.S. 3:1317 provides for the disposition of funds derived from the collection of inspection fees, fines or other sources incident to the operation of this statute and directs that all monies so derived shall be deposited in the general fund of the state treasury, two-thirds thereof to be made available to the commissioner for defraying expenses for the inspection of fertilizer or for such other purposes as may be deemed necessary by him, and one-third thereof to be transmitted quarterly to the state chemist to be used for such

purposes as they contribute to the knowledge of the properties, values and proper use of commercial fertilizers in this State.

The feed statute (LSA–R.S. 3:1891–3:-1898) provides regulations for the sale of commercial feeds in the State of Louisiana, defines the duties and the powers of the Commissioner of Agriculture and Immigration and of the state chemist, imposes licenses, fees, fines and penalties in connection with the sale of such feeds, and directs the disposition of the funds collected therefor. LSA–R.S. 3:1897 provides that all funds derived from the collection of inspection fees, fines or other sources incident to the sale of commercial feeds shall be deposited in the general fund of the state treasury, two-thirds thereof to be made available to the commissioner and one-third thereof to be transmitted quarterly to the state chemist.

The pesticide statute (LSA–R.S. 3:1601–1609, Act 501 of 1952) regulates the sale and purity of pesticides or agricultural poisons, defines the duties and powers of the Commissioner of Agriculture and Immigration and of the state chemist, provides for the registration, inspection and analyses of all pesticides sold or exposed for sale in Louisiana, and imposes registration fees and fines and penalties for violation of the provisions of this act. In particular, LSA–R.S. 3:1606 provides for the disposition of funds derived from the collection of registration fees, penalties, fines or other

sources incident to the sale of pesticides, directing same to be deposited in the general fund of the state treasury, allotting one-half thereof to be made available ·to the commissioner and one-half to be transmitted annually to the state chemist.

Thus, in short, each of the said agricultural statutes provides for the issuance of licenses for the sale of the various products covered thereby for the levying of certain fees for the issuance of said licenses, for certain inspection services and for the levying of fines and penalties. Each directs the disposition of the monies derived from the collection of registration fees, penalties, fines or other sources incident to the operation of the particular statute, directing same to be deposited in the general fund of the state treasury and allotting same in certain proportions to the Commissioner of Agriculture and Immigration and to the state chemist, whose duties are therein defined.

The appellants contend that the prime purpose of the three acts is to regulate the sale of fertilizer, feeds and pesticides for the protection of and for the general welfare of the public and that the levy of fees, licenses and penalties were therefore imposed under an exercise of the police power. They also contend that the regulatory character of the acts is manifested in that violations thereof are made a misdemeanor and subject the violator to fines and penalties.

On the other hand, the appellee contends that the said licenses, fees and penalties were levied by the Legislature as revenue-producing measures as evidenced by the fact that the proceeds derived from the enforcement of the said statutes considerably exceed the cost of their administration, which excess is shown in the record to be as follows:

| Fiscal Year | Excess of Revenue Over Expenditures |
|---|---|
| 1951 | $173,601 |
| 1952 | 169,480 |
| 1953 | 173,864 |
| 1954 | 158,165 |
| 1955 | 135,261 |
| 1956 | 134,000 |

We can reasonably assume that when the Legislature adopted the Louisiana Revised Statutes of 1950 and when it enacted the pesticide statute (Act 501 of 1952) it was aware of a then annual recurrence of revenues materially in excess of expenditures required in the enforcement of these agricultural statutes. Manifestly, under such circumstances had the Legislature intended such measures to be solely regulatory then it is again reasonable to assume that amendatory action would have been taken to reduce the levies imposed therein and thereby produce an amount equally approximating the cost of administering said statutes. Sec. 7 of Act 230 of 1954, providing as it does for practical research in the named field and not exclusively for servicing of the fertilizer, feed and pesticide acts, clearly indicates that proceeds

derived from the enforcement of the three statutes would be used for purposes other then regulatory measures. Sec. 7 provides as follows:

" * * * After having provided for contributions required for the payment of principal and interest on such bonds or other obligations, herein authorized, due each fiscal year and for operations of the State Chemist, the Board shall transfer all excess monies to a special fund for the operation and maintenance of a program of practical research in the fields of analytical chemistry, soils, feeds, fertilizers and pesticides, as directly related to the work of the State Chemist and approved by the Commission of Agriculture and Immigration."

A fee for the license may still be exacted, but it must be such a fee only as will legitimately assist in the regulation; and it should not exceed the necessary or probable expense of issuing the license and of inspecting and regulating the business which it covers. If the state intends to give broader authority, it is a reasonable inference that it will do so in unequivocal terms. But the limitation of the license fee to the necessary expenses will still leave a considerable field for the exercise of discretion where the amount of the fee is to be determined. The fee, of course, must be prescribed in advance, and when it cannot be determined with any accuracy what the cost of regulation is to be. It must therefore be based upon the estimates with more or less probability that the result will fail to come anything near a verification of the calculations. Moreover, in fixing upon the fee, it is proper and reasonable to take into account, not the expense merely of direct regulation, but all the incidental consequences that may be likely to subject the public to cost in consequence of the business licensed. In some cases the incidental consequences are much the most important, and, indeed, are what are principally had in view when the fee is decided upon. Cooley on Taxation, p. 589.

An examination of the record discloses that though each of the feed, fertilizer and pesticide statutes provides for license, registration and inspection fees the revenue realized therefrom is materially in excess of the cost of regulation and bears no comparative relation thereto. All of the revenues so realized have been deposited in the state general fund in the state treasurer's office with no specific allocation of cost of regulation being made to any one or more of said statutes. Such revenues fall within the same category as all other taxes levied by the Legislature. Therefore, we necessarily conclude that since the licenses, fees and fines and penalties materially exceed the legitimate cost of regulation and the necessary or probable expenses of licensing, inspecting and regulating the business which it covers these fees and exactions are plainly imposed for the primary purpose of realizing revenue and are in effect taxes. :

In the case of City of New Orleans v. Heymann, 182 La. 738, 162 So. 582, 584, we said: "Taxes levied under the power to tax for revenue purposes may be devoted to the enforcement of police regulations, it is true; but, nevertheless, they still remain taxes for revenue purposes, and not taxes levied under the police power. State v. Wilson & Co., of Louisiana, 179 La. 648, 154 So. 636."

In the case of State v. Wilson & Co., of Louisiana, supra, we held that a tax levied under Sec. 8 of Art. 10 of the Constitution relative to taxation for revenue purposes may be devoted to the enforcement of a police regulation, as is frequently done; and in this case we declared as follows [179 La. 648, 154 So. 640]:

"Section 8 of article 10 of the Constitution of 1921 authorizes the Legislature to levy license taxes on such classes of persons, associations of persons, and corporations, pursuing any trade, business, occupation, vocation, or profession, as the Legislature may deem proper. * * * The fact that the act, which levies the tax, devotes it exclusively to the eradication of ticks, does not make the tax one levied under the police power, under which, it may be said, among other requirements, that the tax should never exceed materially the regulatory purpose for which it is levied. The devoting of the tax exclusively to the eradication of the fever tick may be regarded as being in the nature of an appropriation of a tax levied under the powers of taxation, conferred by the Constitution, to defray the estimated expense of the Cattle Dipping Law, in whole or in part."

Under the jurisprudence of this State the use by the Legislature of the word "fees" in the feed, fertilizer and pesticide acts is of no importance in determining the true nature of the tax, as the tax is levied on each unit of feed and fertilizer sold and each pesticide brand registered and we conclude that none of said fees were assessed as regulatory measures. In the case of Giamalva v. Cooper, supra, we said [217 La. 979, 47 So.2d 793]:

"The fact that the excise is denominated a license is of no importance in determining the true nature of the tax. Indeed, the words 'license' and 'excise' have been interchangeably used by legislatures and courts in describing a tax without particular significance as to its nature. See Lionel's Cigar Store v. McFarland, 162 La. 956, 111 So. 341 and Louisiana State Dept. of Agriculture v. Sibille, 207 La. 877, 22 So.2d 202. In final analysis, they are excises as distinguished from property taxes."

It is not a novel experiment in Louisiana for a state agency to be authorized to dedicate and pledge proceeds from license fees and penalties to secure the payment of bonds or other evidences of indebtedness. Such dedication and pledge has heretofore been approved by us in the case of State ex rel. Porterie v. Charity Hospital of

Louisiana at New Orleans, 182 La. 268, 161 So. 606.

Therefore we conclude that the fees, fines and penalties imposed by the above fertilizer, feed and pesticide statutes are revenue licenses or taxes, and that the pledge thereof under the provisions of Act 230 of 1954 has been properly and validly authorized by the Board of Supervisors of L. S. U. Caldwell Brothers v. Board of Supervisors of Louisiana State University, 176 La. 825, 147 So. 5; State ex rel. Porterie v. Charity Hospital of Louisiana at New Orleans, supra.

Accordingly, for the reasons assigned, the judgment appealed from is affirmed.