Dear Hon. McPherson:
You requested the opinion of this office concerning the validity of a fifteen dollar record check fee that the Louisiana Office of Motor Vehicles ("OMV") recently began charging to applicants for Class "D" and Class "E" driver's licenses and license renewals. The record check fee is expressly authorized by La.R.S. 32:409.1 (A)(6)(c)(iii), which was enacted in 1989 and amended in 1993, although OMV did not implement the fee until March 8, 2010. Acts 1989, No. 293, Acts 1993 No. 383. In order to answer your specific questions about the record check fee, we briefly review the relevant legislative and administrative history.
In 1989, the legislature enacted Act 293, codified in part at La.R.S. 32:409.1, in order to "adopt the substantive provisions of the model uniform commercial driver's license law," and to ensure compliance with federal laws. Acts 1989, No. 293. The Act set forth mandatory background checks for commercial driver's license applicants, requiring that the Department of Public Safety ("DPS")[1] check three sources: "the applicant's driving record as maintained by his current state of licensure," the Commercial Driver's License Information System ("CDLIS"), and, once active, the National Driver Register ("NDR").Id. at Section 409.1(A)(6). The provision that required a background check against the NDR for commercial driver's license applicants also authorized, but did not require, a background check for Class "E" personal driver's license applicants. Id. The provision further authorized DPS to charge a fee for the background check: *Page 2 
The department may perform a similar record check for all applicants of a Class "E" personal vehicle driver's license and may charge such applicants a record check fee equal to the application for a commercial driver's license.
Id. at Section 409.1 (A)(6)(c)(iii). The Act also established a non-refundable fifteen dollar application fee for a commercial driver's license, which by reference is the amount of the record check fee for Class "E" licenses. Id. at Section 412(B)(4).
In 1993, the legislature enacted Acts 1993, No. 383, amendinginter alia La.R.S. 32:409.1, which removed Class "D" chauffeur licenses from the regulatory scheme for commercial driver's licenses, and placed them within the regulatory scheme for personal driver's licenses. Acts 1993, No. 383. The statute authorizing the record check fee now reads:
The department may perform a similar record check for all applicants of a Class "D" chauffeur's license or a Class "E" personal vehicle driver's license and may charge such applicants a record check fee equal to the application for a commercial driver's license.
La.R.S. 32:409.1 (A)(6)(c)(iii). The amount of the fee remains unchanged at fifteen dollars. La.R.S. 32:412(B)(4).
OMV did not immediately begin charging the fee to personal driver's license applicants in 1989 because it was unable to perform the background checks at that time. Some time in 1998, OMV began checking the background of Class "E" license applicants against the NDR using the NDR's Problem Driver Pointer System ("PDPS"), but did not charge the record check fee.
In 1999, the federal government enacted the Motor Carrier Safety Improvement Act of 1999, which mandated background checks of all driver's license applicants — both commercial and personal — against both the NDR and the CDLIS. 49 U.S.C.A. § 30304(e). We understand from conversations with OMV personnel that The Federal Motor Carrier Safety Administration promulgated a final rule implementing this requirement in September of 2002, and set a September 30, 2005 deadline for compliance. OMV had been checking the background of Class "D" and "E" license applicants against the NDR, but was not capable of checking the CDLIS database for those applicants until February of 2008. Since that time OMV has checked both the NDR and the CDLIS databases in compliance with federal law, but did not charge the record check fee until March of 2010, when it finally implemented the fee for Class "D" and "E" driver's licenses and license renewals. *Page 3 
Answering each of your six questions in turn, we start with your initial inquiry:
(1) Is the fee for the record check authorized in Acts 293 and 382 as set forth above, a "fee" or a "tax" under the Louisiana Constitution?
The Louisiana Constitution does not define the terms "tax" or "fee." There exists, however, a considerable body of jurisprudence addressing this very issue, as evidenced by this passage from the Louisiana Supreme Court opinion in Audubon Ins. Co. v.Bernard:
It is well settled generally and in Louisiana that not every imposition of a charge or fee by the government constitutes a demand for money under its power to tax. If the imposition has not for its principal object the raising of revenue, but is merely incidental to the making of rules and regulations to promote public order, individual liberty and general welfare, it is an exercise of the police power. City of Lake Charles v. Wallace, 247 La. 285, 170 So.2d 654 (1965); Ewell v. Board of Supervisors, Etc., 234 La. 419, 100 So.2d 221 (1958); 4 Cooley, The Law of Taxation, § 1784 (4th Ed. 1924). In similar fashion, the police power may be exercised to charge fees to persons receiving grants or benefits not shared by other members of society. Southern Pacific Transp. Co. v. Parish of Jefferson, 315 So.2d 619 (La. 1975); City of Lake Charles v. Wallace, supra; Louisiana Ry. Navigation Co. v. Madere, 124 La. 635, 50 So. 609 (1909); Griggsby Constr. Co. v. Freeman, 108 La. 435, 32 So. 399 (1902); Cf. National Cable Television Ass'n, Inc. v. United States, 415 U.S. 336, 94 S.Ct. 1146, 39 L.Ed.2d 370 (1974); Cooley, supra. But if revenue is the primary purpose for an assessment and regulation is merely incidental, or if the imposition clearly and materially exceeds the cost of regulation or conferring special benefits upon those assessed, the imposition is a tax. Acorn v. City of New Orleans, 407 So.2d 1225 (La. 1981); Ewell v. Board of Supervisors, Etc., supra; City of New Orleans v. Heymann, 182 La. 738, 162 So. 582 (1935); State v. Wilson Co., Inc. of Louisiana, 179 La. 648, 154 So. 636 (1934).
Audubon Ins. Co. v. Bernard,474 So.2d 1072, 1074-75 (La. 1983). According to the law as it was enacted in 1989 and as it reads presently, the record check fee is only chargeable to those applicants for whom OMV performs a record check. Acts 1989, No. 263; La.R.S. 32:409.1(A)(6)(c)(iii). The fact that the fee may only be charged to *Page 4 
applicants for whom the OMV runs a background check indicates that the fee was intended to defray the cost of said record check. It is therefore "incidental to the making of rules and regulations" for driver's licenses and is an exercise of the police power rather than the power to tax. Audubon Ins. Co., supra at 1074. Of course, the fee is only charged to those seeking the privilege of a driver's license, and the benefit of that license is "not shared by other members of society." Id. As such, the authority to charge the fee is more properly ascribed to the police power, rather than the taxing power, of the State. Id. Furthermore, there is no evidence that the primary purpose of the record check fee is to raise revenue. We understand that the legislation was enacted to comply with federal mandates. Finally, according to OMV, the cost of implementing the record check system for all driver's license applicants is approximately sixteen dollars per license, so the record check fee does not exceed the cost of regulation. Under each of the criteria recognized in the Audubon case, it is apparent that the record check fee is a fee rather than a tax. Id. We therefore conclude that the record check fee is a fee and is not a tax within the meaning of certain provisions of the Louisiana Constitution discussed in further detail below.
(2) If the record check charge is determined to be a tax, are Act 293 of 1989 and Act 382 of 1993 unconstitutional as legislation regarding the levy of taxes in a regular legislative session in an odd-numbered year prohibited by Article III, Section 2 of the Louisiana Constitution?
In answer to your first question, we concluded that the record check fee is not a tax; our conclusion renders this second question moot.
(3) If the record check charge is determined to be a fee, is it a fee under Article VII, Section 2.1 of the Louisiana Constitution?
Article VII, Section 2.1 of the Constitution, adopted in 1995, requires a two-thirds vote for any new fee or increase in existing fees:
Section 2.1.(A) Any new fee or civil fine or increase in an existing fee or civil fine imposed or assessed by the state or any board, department, or agency of the state shall require the enactment of a law by a two-thirds vote of the elected members of each house of the legislature.
(B) The provisions of this Section shall not apply to any department which is constitutionally created and headed by an officer who is elected by majority vote of the electorate of the state. *Page 5 
La.Const. art. VII, § 2.1. Not all fees imposed by the state or its agencies, however, are fees as contemplated by the constitutional amendment. We determined in our answer to your first question that the record check fee is a fee, rather than a tax. In concluding that the record check fee was a fee and not a tax, we employed the analysis appropriate for distinguishing fees from taxes. The analysis for determining whether a fee is governed by La.Const. art. VII, § 2.1 employs a different standard.
Shortly after the adoption Article VII, Section 2.1, this office issued an opinion recognizing that, as a practical matter, the legislature cannot oversee the amounts charged for the "thousands of products and services . . . which may fall under the term fee." La.Atty.Gen.Op. No. 96-353. A more reasonable interpretation was to limit the definition of a fee under Section 2.1 to those charges assessed for defraying the cost of a governmental service or the cost of regulation of a particular area:
Adopting a definition of the word fee which would restrict it to a charge for the services of a public official or a privilege under the control of government is a reasonable interpretation which gives effect to the Legislature's intent while preventing an absurd result. Under such an interpretation, charges which are assessed by a governmental entity for the purpose of defraying the costs of providing a governmental service or the costs of regulating a particular area would be considered fees. Those fees or charges for non-governmental functions or products and/or services not in the control of the governmental entity at issue would be exempt from legislative review.
Id. This definition was followed by our office in Opinions No. 98-353 and 98-373, and was adopted by the First Circuit Court of Appeal in Louisiana Public Facilities Authority v. All Taxpayers,et al., 2003 CA 2738 (La.App. 1 Cir. 12/23/03), 868 So.2d 124. The record check fee is undoubtedly a charge assessed for the purpose of defraying the cost of regulating the issuance of driver's licenses. The record check fee is therefore the type of fee that would be governed by La.Const. art. VII, § 2.1.
Nevertheless, it does not necessarily follow that implementation of the record check fee requires the legislative approval set forth in La.Const. art. VII, § 2.1, since the constitutional provision applies only to a "new fee" or an "increase in an existing fee." La.Const, art. VII, § 2.1. While OMV began charging the fee in March of this year, the legislature created the fee for Class "E" licenses in 1989, and for Class "D" licenses in 1993. Acts 1989, No. 293; Acts 1993, No. 382. The first issue presented is therefore whether a fee that was created by the legislature before the adoption of Article VII, Section 2.1 of the constitution, but was implemented after said amendment, is a "new fee" that requires additional approval by the legislature. *Page 6 
This office has previously considered this issue in Attorney General Opinion No. 06-0293, which addressed several questions that arose in light of Article VII, Section 2.1. Among these issues was "whether a statute must be enacted by a two-thirds vote of the Legislature prior to the imposition of a Building Use Fee." La.Atty.Gen.Op. No. 06-0293. Act No. 15 of 1967, which amended Act No. 619 of 1954, had authorized institutions of higher learning to finance construction of certain academic facilities through the issuance of bonds. Acts 1967, No. 15. The Act further authorized the institutions to charge a building use fee to its students in order to repay said bonds. Id. This office reasoned that La.Const, art. VII, § 2.1 did not apply to a building use fee because the fee had been authorized in 1967, before the 1995 constitutional amendment:
It is the opinion of this office that a statute need not be enacted. Act 15 provides for a prohibition on the increase in this fee. Act 15 was created by the Legislature in 1967, hence it was in effect at the time La.Const. art VII, § 2.1 became effective in 1995. Thus, because there is a prohibition on an increase in the Building Use Fee and furthermore because this is not a new fee, there is no need for an additional statute.
La.Atty.Gen.Op. 06-0293. The opinion does not consider whether the building use fee had been previously imposed by any particular institution. Under the reasoning of Opinion No. 06-0293, a fee that was legislatively authorized before the 1995 adoption of Article VII, Section 2.1 is not a "new fee" and therefore does not require additional legislative approval in order to be implemented. Applying that reasoning to the record check fee, the record check fee is not a "new fee" because it was authorized by the legislature in 1989 and 1993, prior to the effective date of the constitutional amendment.
Opinion No. 96-482, issued to the Southern University System (the "System"), considered a similar issue. In July of 1995, the Southern University Board of Supervisors (the "Board") increased the tuition and fees for the System, but the increases were not effective until the Spring of 1996. Article VII, Section 2.1 took effect on November 23, 1995. La.Const. art. VII, § 2.1. The amendment therefore became effective after the tuition and fee increases were authorized, but before the increases were implemented.
The opinion first noted the general rule of construction that laws are presumed to have prospective application. La.Atty.Gen.Op. No. 96-482. The exceptions to this general rule are statutes that are remedial or procedural in nature, and statutes that contain language reflecting "a clear intent to have retroactive effect." Id, citing Paul v. Edwards,323 So.2d 488 (La.App. 1 Cir. 1975). Under these guidelines, the constitutional amendment cannot be applied retroactively: *Page 7 
Article VII, Section 2.1 is neither remedial nor procedural and there is no apparent intent in the language chosen for this amendment to apply retroactively. Thus, under general principles of construction, applicable to statutes and constitutional provisions, the substantive requirements of Article VII, Section 2.1 are to be applied only to those factual situations arising after the amendment's effective date.
La.Atty.Gen.Op. No. 96-482. The Board's action authorizing the increases in tuition and fees took place in July of 1995, before the amendment's effective date. The fact that the increases were not implemented until the spring of 1996 did not affect the applicability of the amendment. As such, this office concluded that Article VII, Section 2.1 was "not applicable to the increases in tuition and fees enacted by the Board prior to the amendment's effective date." Id.
The same reasoning can be applied to the record check fee. The legislature created the record check fee for Class "E" licenses in 1989, and for Class "D" licenses in 1993. Acts 1989, No. 293; Acts 1993, No. 382. Article VII, Section 2.1 took effect in November of 1995, and can only be applied prospectively. La.Atty.Gen.Op. No. 96-482. It follows that Article VII, Section 2.1 cannot retroactively apply to the record check fee.
We must also consider whether the implementation of the record check fee is an "increase in an existing fee," and therefore falls within the requirements of Article VII, Section 2.1. La.Const. art. VII, § 2.1. When the legislature enacted the record check fee in 1989, it fixed the fee at the same amount of the commercial license application fee, which the Act set at fifteen dollars. Acts 1989, No. 293. The Act did not give any authority to change the amount of the record check fee, which remains fifteen dollars to this date. La.R.S. 32:409.1(A)(6)(c)(iii); LA.R.S. 32:412(B)(4). Even though the fee was not implemented until recently, the amount of the fee has never changed. As such, it does not appear that the implementation of the record check fee is an increase in an existing fee requiring legislative approval under Article VII, Section 2.1.
We note that the record check fee could be considered an increase in the total fees charged to driver's license applicants, and therefore be an increase in an existing fee. The statutes are clear, however, that each of the fees charged for a driver's license is a separate fee, e.g., the basic license fees in La.R.S. 32:412(A) (B), the commercial application fee in La.R.S. 32:412(B)(4), the motorcycle endorsement fee in La.R.S. 32:412(C), and the handling fee in La.R.S. 412.1(A). Even if the record check were interpreted to be an increase in an existing fee, the legislature initiated the increase in 1989 and 1993, before the 1995 adoption of Article VII, Section 2.1. As a consequence, Article VII, Section 2.1 would not be retroactively applicable to this "increase in an existing fee" for the reasons discussed above. La.Atty.Gen.Op. No. 96-482. *Page 8 
The legislative history of Article VII, Section 2.1 is also instructive on this issue. Article VII, Section 2.1 began as House Bill No. 320 in the 1995 Regular Session; passed as Acts 1995, No. 1324; and was approved by the voters in the 1995 elections. Acts 1995, No. 1324. Prior to the 1995 amendment, the Constitution required that any new taxes, as well as increases to existing taxes, be passed by a two-thirds "supermajority" vote of each house of the legislature. La.Const. art. VII, § 2. There was no provision for approval of fees by the legislature. According to the minutes of the House Committee on Ways and Means, between 1988 and 1995, fees imposed by the state had "increased from $426 million to $933 million." Minutes, House Committee on Ways and Means, April 25, 1995, House Bill No. 320 by Representative Gunn. "[V]ery few of those increases were voted on by the legislature; the fees were imposed through the Administrative Procedure Act."Id. Representative Gunn introduced the Bill in order to provide for legislative review of such fees. Representatives Reilly and Doerge approved of the constitutional amendment because "fees should have the same legislative review as taxes." Id. It is clear that Representative Gunn and the legislators on the House Ways and Means committee intended to limit the imposition of fees through the rulemaking process by requiring legislative approval of all such fees.
The record check fee was created by the legislature; it was not imposed pursuant to the rulemaking process of the Louisiana Administrative Procedures Act, La.R.S. 49:950, etseq. The record check fee was the product of the traditional legislative process under the sole purview of the legislature. As such, it is not the type of fee that the constitutional amendment was intended to limit. And it would be superfluous to require legislative approval under Section VII, Article 2.1 for the imposition of a fee that was created by the legislature and approved through the legislative process.
Consistent with the previous opinions of this office, as well as the legislative history and purpose of the constitutional amendment, we conclude that the record check fee is not a "new fee" or "an increase in an existing fee" subject to Article VII, Section 2.1.
(4) Since Act 382 of 1993 began in the Senate as a Senate Bill, is the authority to impose a fee contained in Act 382 unconstitutional in violation of Article III, Section 16(B) of the Louisiana Constitution which requires that all bills for raising revenue originate in the House of Representatives?
Our review of the legislative history shows that the record check fee was originally created by Acts 1989, No. 293, which originated in the House of Representatives as House Bill No. 1371. Under that Act, the record check fee of fifteen dollars was authorized only for Class "E" driver's licenses. The referenced act, Acts 1993, No. 382, amended the provision to authorize a record check fee for Class "D" driver's licenses. *Page 9 
In order to determine whether Acts 1993, No. 382, which included the authorization for the record check fee for Class "D" driver's licenses, is a "bill for raising revenue" that could not originate in the Senate, we must look at the law existing at that time, as well as the changes brought about by Acts 1993, No. 382.
The relevant laws on Class "D" driver's licenses in effect in 1993 were established by Acts 1989, No. 293. The 1989 act reclassified the Class "D" driver's license from a chauffeur's license to a commercial driver's license, thereby eliminating the chauffeur's license:
(B)(1) There shall be two general types of driver's licenses: the "Personal Vehicle Driver's License" (Class "E") and the "Commercial Driver's License" (Classes "A", "B", "C", and "D"). There shall no longer be a separate chauffeur's license. . . .
Acts 1989, No. 293, (cited passage codified at La.R.S. 32:408(B)(1) (parentheticals in original)). The basic license fee for a Class "D" commercial driver's license in 1993 was forty dollars or fifty dollars, depending on the applicant's residence. Acts 1989, No. 293, codified at that time at La.R.S. 32:412(A)(1) (2). The applicant also had to pay a skills test fee of not more than thirty dollars.Id. at Section 412(B)(3). It also appears that the applicant for a Class "D" license also had to pay the fifteen dollar application fee for commercial driver's licenses.Id. at Section 412(B)(4). The application and license fees for a Class "D" license immediately prior to the enactment of Acts 1993, No. 382 therefore ranged from a minimum of fifty-five dollars (lower basic fee, fifteen-dollar application fee) up to a maximum of ninety five dollars (higher basic fee, thirty-dollar skills test fee, fifteen-dollar application fee).
Acts 1993, No. 382 reinstated the chauffer's driver's license classification for the Class "D" license, thereby removing it from the commercial license regulatory scheme:
(B)(1) There shall be three general types of driver's licenses:
(a) The "Commercial Driver's License" (Classes "A", "B", and "C").
(b) The "Chauffeur's License" (Class "D").
(c) The "Personal Vehicle Driver's License" (Class "E").
Acts 1993, No. 382; La.R.S. 32:408(B)(1) (parentheticals in original). The 1993 act eliminated the skills test fee for Class "D" licenses. Acts. 1993, No. 382. The basic fee for the Class "D" license remained unchanged. Id. The only other change with regard to fees for Class "D" licenses was that the record check fee was authorized for Class "D" licenses. The application and license fees for a Class "D" license after Acts 1993, No. 382 was forty dollars (lower basic fee amount) to sixty-five dollars (higher basic fee, *Page 10 
fifteen-dollar record check fee). This range of fees for the Class "D" license was lower than the range of fees before the act. The 1993 act was not a "bill for raising revenues"; it merely changed the classification of the Class "D" license and lowered the fees chargeable for such license. It follows that Acts 1993, No. 382 was not unconstitutional in violation of Article III, Section 16(B) of the Louisiana Constitution.
(5) Is the authorization given to the OMV to charge the record check fee provided by statute enacted in 1989 and amended in 1993 self-implementing or is the authorization superseded by the provisions of Article VII, Section 2.1 of the Louisiana Constitution adopted in 1995, as the authorization was not exercised before 2010?
As fully discussed in the course of our response to your third question, the 1995 amendment to the constitution, Article VII, Section 2.1, cannot be applied retroactively to require additional legislative approval of the record check fee.
(6) Can the charge of the record check fee for Class "D" and Class "E" driver's licenses be implemented by the OMV without following the provisions of the Louisiana Administrative Procedure Act, La.R.S. 49:950, et seq., concerning the adoption of fees?
The Louisiana Administrative Procedure Act ("LAPA"), La.R.S. 49:950, et seq. provides a detailed procedure for "the adoption, amendment, or repeal of any rule." La.R.S. 49:953(A). The definition of a "rule" does not include the adoption of a fee:
"Rule" means each agency statement, guide, or requirement for conduct or action, exclusive of . . . those purporting to adopt, increase, or decrease any fees imposed on the affairs, actions, or persons regulated by the agency. . . .
La.R.S. 49:951(6). According to the definition of "rulemaking," however, the rulemaking procedures set forth in La.R.S. 49:953 apply to the adoption of fees:
Except where the context clearly provides otherwise, the procedures for adoption of rules and of emergency rules as provided in R.S. 49:953 shall also apply to the adoption of fees.
La.R.S. 49:951(7). An agency may therefore be required to follow the LAPA before adopting a fee. *Page 11 
The issue remains, however, whether the recent implementation of the record check fee is an adoption of a fee as that phrase is contemplated by the LAPA. The record check fee was created by the legislature to be charged to a particular class of applicant in a particular circumstance for a particular amount. La.R.S. 32:409.1(A)(6)(c)(iii), La.R.S. 32:412(B)(4). OMV did not adopt a fee of its own accord; it simply (if belatedly) implemented a fee that was authorized by statute.
Other provisions of the Driver's License Law provide some insight on this issue. First consider the provisions of La.R.S. 32:412(A)(5) and (6), which statutorily fix the basic fee for a Class "E" driver's license at thirteen dollars and fifty cents ($13.50):
Every applicant for a Class "E" driver's license, or for renewal of a Class "E" driver's license, . . . shall pay for such basic license a fee of thirteen dollars and fifty cents, which shall be the cost of such basic license.
La.R.S. 32:412(A)(5).[2] The basic license fee is fixed by statute, so there is no need for OMV to issue a rule fixing the amount of the basic license fee.
Consider, on the other hand, paragraph (B)(3) of the very same statute, which authorizes OMV to impose a fee for a skills test for commercial driver's licenses for a maximum fee of sixty dollars. La.R.S. 412(B)(3). That portion of the statute authorizes OMV to increase the maximum fee, but specifies that "[t]he increased maximum fee shall be established by rule adopted in accordance with the Administrative Procedure Act,. . . ." Id. This provision is instructive for two reasons. First, it shows that the LAPA rulemaking procedures are necessary when the agency makes an independent determination based on the exercise of powers delegated by the legislature. Second, it shows that the legislature was mindful that it could direct OMV to follow the rulemaking process, but that it chose not to require rulemaking for the record check fee.
The legislature specifically authorized OMV to charge a record check fee in the statutorily-fixed amount of fifteen dollars. OMV did not exercise any legislatively-delegated powers; it simply implemented the fee in the amount and for the purpose specified by statute. One purpose of the LAPA is to provide public accountability for the actions of administrative agencies that exercise delegated legislative powers, but that, unlike the legislature, may not otherwise be accountable to the public. Since the record check fee was created by the legislature, which is politically answerable to the public through elections, there is no need for further public accountability through the LAPA. *Page 12 
Therefore, this office is of the opinion that OMV was not required to follow the rulemaking procedures of the LAPA before implementing the record check fee.
We trust that this opinion adequately responds to your request, and thank you for the opportunity to be of service. If you have any questions or comments, please do not hesitate to contact our office.
Sincerely yours,
JAMES D. "BUDDY" CALDWELL ATTORNEY GENERAL
BY: __________________________ Charles W. Belsom, Jr. Assistant Attorney General
JDC:CWB:Irs
[1] DPS implements the regulation of driver's licenses through OMV. As such, for purposes of this opinion, the agencies are interchangeable.
[2] The cited provision of La.R.S. 32:412(A)(5) applies generally to all residents except those living in cities with a population in excess of 450,000. Such residents pay the same fee pursuant to La.R.S. 32:412(A)(6).